HESS *v.* PREFERRED MASONIC MUTUAL ACCIDENT ASSO-
CIATION OF AMERICA.[1]

1. ACCIDENT INSURANCE — HAZARDOUS OCCUPATION — INCIDENTAL
EMPLOYMENT.

A provision in an accident policy that it shall be void as to
all accidents occurring to the insured when "engaged in
any profession, employment, or exposure" not rated as pre-
ferred does not apply to the casual performance of an act
pertaining to an excepted risk, if in the particular case it per-
tains incidentally to the regular employment of the insured.

2. SAME—OPERATION OF BUZZ-SAW—QUESTION FOR JURY.

A bank cashier cannot be said, as a matter of law, to have been
engaged in an exposure not incident to his employment,
while operating a buzz-saw in sawing a board to be used in
the bank. GRANT, J., dissenting.

3. SAME—UNNECESSARY DANGER—VOLUNTARY EXPOSURE.

Whether he thereby "voluntarily exposed himself to unneces-
sary danger" is also for the jury to determine.

4. SAME—BURDEN OF PROOF.

An accident insurance company has the burden, in an action
upon a policy, of proving that an injury to plaintiff, shown to
be the result of an accident, was within some exception named
in the policy.

5. APPEAL—INSTRUCTIONS—INCONSISTENCY.

A party cannot complain of an inconsistency in a charge due
to the fact that the court gave an instruction preferred by
him which was more favorable to him than the law justified.

Error to St. Joseph; Padgham, J., presiding.   Sub-
mitted January 13, 1897.   Decided March 23, 1897.

[1]Rehearing denied June 18, 1897.

*Assumpsit* by Lloyd B. Hess against the Preferred Masonic Mutual Accident Association of America on a policy of insurance.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Moore & Moore* ( *H. P. Stewart,* of counsel ), for appellant.

*Howard, Roos & Howard,* for appellee.

MOORE, J.   The plaintiff sued the defendant to recover for the loss of a hand, which was cut off by coming in contact with a buzz-saw.   The case was tried by a jury, who rendered a verdict in favor of plaintiff.   Defendant appeals.

When the plaintiff was insured by the defendant, he was cashier in a bank.   Plaintiff testified that he wanted a cabinet for use in the bank, and went to a planing mill to have some cherry boards sawed off with which to make the cabinet; that he told Mr. Bloom, an employé, what he wanted; that the employé started the cut-off saw, and cut off some boards for the shelves, and took them to the band saw, to put more work upon them; that, while the employé was doing this, plaintiff saw the ends of the cherry boards on the floor near the cut-off saw, and thought he could use them for handles to the cabinet, and requested a 14-year-old boy to saw them off for him; that the boy started the saw, but did not saw off the blocks as plaintiff expected him to do; that the plaintiff thought he could do it himself, and that he did saw them off; that, after he had sawed off the blocks, he stood close up to the table, watching the boy, who was about 20 feet away, piling lumber; that he was simply waiting by the side of the table.   Plaintiff further testified that he could not say how long he had been waiting, that it may have been one minute, or it may have been five; that there were sawdust and little blocks of wood on the floor; that he stepped on something, and stumbled, and lost his balance, and threw out his

arms to save himself from falling, when his wrist came in contact with the saw, and his hand was cut off. He further testified that, when he told the proprietor of the mill what he wanted done, he was requested by him to show Mr. Bloom how he wanted the work done, and that he went into the mill for that purpose.

One of the defenses interposed was that the plaintiff cut off his hand purposely. It will not be necessary to discuss that defense, because the jury have found against the defendant upon that proposition.

The other defenses are that the injury occurred while the insured was doing what was forbidden by the policy. Its terms were: "The member is required and agrees to use all due diligence for his personal safety and protection;" that the insurance should not cover "voluntary exposure to unnecessary danger."

The policy also contained the following provision:

"Inasmuch as eligibility to membership in this association is confined by its charter to persons whose occupations are comprised within the classification commonly known as 'Preferred Risks' by casualty companies, a copy of which classification is printed upon the back of this certificate, it is therefore agreed that this certificate shall be wholly void as to all accidents occurring to the insured when engaged in any profession, employment, or exposure not herein rated as a preferred occupation."

It is the claim of the defendant that the insured "was engaged in a profession, employment, or exposure not rated as a preferred occupation in the policy," and for that reason cannot recover; and that, as a matter of law, the judge should have so determined, and directed the jury to return a verdict for the defendant,—citing a number of cases in support of that contention, all of which are distinguishable from the case here, except the case of *Knapp* v. *Accident Ass'n*, 53 Hun, 84. This case does sustain the contention of appellant, but it is contrary to the great weight of authority. In Nibl. Acc. Ins. & Ben. Soc. § 409, it is said:

" A change of occupation means 'an engaging in another employment as a usual business.' It does not apply to temporary employments during leisure hours, to acts done outside of one's usual and ordinary business, or to casual employment in a different business."

A provision of a policy limited the liability of the company to a less sum than that named in the policy if the insured should be injured in any occupation or exposure classed as more hazardous than that specified in the policy. It was held that the terms "occupation or exposure classed by this company as more hazardous" referred to distinct, classified occupations or employments, and that, to bring a case within the provision limiting the liability of the company, the insured must be within one of such classes,—that is, engaged in one of the more hazardous occupations. *Miller* v. *Insurance Co.*, 39 Minn. 550.

A case involving the same principles which should control the disposition of this case is *Stone's Adm'rs* v. *Casualty Co.*, 34 N. J. Law, 371, in which the court said:

"The injuries excluded from the compensations of the policy are described as those that are 'received in any employment or by any exposure either more hazardous in itself, or classified by the company as more hazardous.' These terms, literally rendered, require that the assured, to come within their effect, must, at the time of the injury, be in an employment more dangerous than his own. The language has respect to employments, and not to individual acts. It is true that a certain degree of ambiguity is introduced by the expression 'other exposure,' but, looking at the body of the policy, we find these terms used in the sense of the risks arising from a business or occupation. By adhering to the literal signification of the terms employed, these indorsements prefixed to the several classes of employments lose all force as independent stipulations, and serve the simple purpose of graduating such employments for the service of that provision of the policy which prohibits the assured from passing, at his own option, from one business to another. Understood in this view, they are properly a part of the classification; but, if they are to be received as containing new terms of the con-

tract, they are entirely out of place. If the company intended to say to the assured that if he did any act which did not strictly belong to his own occupation, but was embraced more properly in some other business, and if thereby any harm to him accidentally resulted, that in such event he could claim nothing under his policy, it was easy for them to do so in plain language. Such a stipulation would obviously be one of a most important character, and we would expect to find it in the body of the instrument. A qualification of the agreement so restrictive of the rights of the party insured ought not to be admitted unless the terms of this indorsement will bear no other rational interpretation. If the terms used are imperfect or ambiguous, it is the fault of the defendants. It is their contract, and the construction of it must be most strongly against them."

And it was held the plaintiff was entitled to recover.

The case of *Union Mut. Acc. · Ass'n* v. *Frohard*, 134 Ill. 228 (23 Am. St. Rep. 664), is an instructive case. The opinion states:

"The principal contention of appellant is that the deceased was killed while engaged temporarily in an act or occupation classed as more hazardous than the one in which he was accepted, and that appellee is therefore entitled to recover only the amount provided for such hazardous risk and occupation. The contention of appellee is that there was no change of occupation within the meaning of the by-laws and certificate of insurance. The deceased was a hardware merchant. He did not follow the occupation of a hunter for hire or profit. He was killed while engaged in the act of hunting as a recreation, and it does not appear that he had hunted with a gun on any occasion since the issuance of the policy other than that upon which the accident occurred. The language of the policy is: 'Any member receiving an injury while engaged, temporarily or otherwise, in an occupation more hazardous than the one in which he was engaged when insured,' etc. 'Occupation' is defined by lexicographers to mean 'that which occupies or engages the time or attention; the principal business of one's life; vocation; employment; calling; trade.' The classification of hazards in the by-laws is made upon the basis of occupations. Merchants and those following other like

vocations are placed in division A; grain measurers and others in division B.  *  *  *  The by-laws in question must receive a reasonable construction.  It would be unreasonable and absurd to hold that the merchant who at one time measured a few bushels of grain, at another hung a few rolls of wall paper upon his own premises, at another drove a team of horses in a carriage or wagon, and at still another rowed a skiff for exercise or recreation, became, within the true intent and meaning of these by-laws, at these several times, a grain measurer, a paper hanger, a teamster, and a boatman, respectively.  The word 'occupation,' as found in these by-laws, must be held to have reference to the vocation, profession, trade, or calling which the assured is engaged in for hire or for profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the daily life of men in any or all occupations.  *  *  *  It is urged, however, that the contract of insurance contains the words, 'in *any act* or occupation,' instead of the mere words, 'in another occupation,' found in the by-laws; and that the words, 'while engaged, temporarily or otherwise, in an *act*,' cannot be ignored, but that they have a definite and clear meaning, and must be given legal force and effect.  It is to be noted that the words used in the contract are words selected and used by the corporation itself, and are, therefore, to be interpreted most strongly against it; or that, at all events, they are to be construed according to their common and literal meaning in favor of the assured.  *  *  *  We have already seen that the classification of hazards made in the by-laws is predicated only upon occupations.  There is not in the by-laws or in the record any classification of hazards in respect to acts.  In other words, there is no act which is classified as more or less hazardous than another, and no act which is classed as more hazardous than the occupation designated in the certificate of insurance issued to the deceased.  The case, then, does not stand otherwise than it would if the word 'act' were not found in the contract."

See, also, *North American, etc., Ins. Co.* v. *Burroughs*, 69 Pa. St. 43 (8 Am. Rep. 212); *Tucker* v. *Mutual Ben. Life Co.*, 50 Hun, 50.

Upon the feature of the case just discussed, the court, correctly as we think, charged the jury as follows:

"It is provided in the conditions printed in the policy or certificate of membership, among other things, 'Said policy shall be wholly void as to all accidents occurring when engaged in any profession, employment, or exposure not rated in the policy as a preferred occupation;' and it is claimed by the defendant that plaintiff was so engaged at the time he lost his hand. It is claimed by the plaintiff, however, that he was not using the saw at all for any purpose at the time he lost his hand, and had not been for some time prior thereto. The burden of proof to show that the plaintiff was using the saw at the time he lost his hand is upon the defendant, and, if you find that the defendant has failed to prove its contention in this regard by a preponderance of evidence, then you will have no further occasion to consider this branch of the case. In considering the question as to whether the plaintiff was engaged in any profession, employment, or exposure not rated in the policy as a preferred occupation at the time he lost his hand, I charge you that engaging in an occupation on the part of the person insured against injury by accident does not mean a casual engaging such as most men do, or may do, or may resort to during the intervals of time when their usual employment does not engage them, but rather to engaging in such employment as a usual business; and, even though you find that the plaintiff incidentally engaged in sawing off blocks from boards at the time he lost his hand, you would not, for that reason, be required to find that he was injured while engaged in a profession, occupation, or exposure not rated in the policy as a preferred occupation. The language of this condition of the policy must meet with a reasonable construction at your hands. If the plaintiff was actually engaged in sawing blocks at the time he lost his hand, it will then be a question of fact for you to determine whether this act was one that pertained incidentally to his regular occupation, or whether it pertained to that more hazardous occupation not classed as preferred, with the burden of proof on this issue upon the defendant. In determining this question you can and should take into consideration whether, under the evidence, the plaintiff was engaged, if you find he was engaged, at the time of the injury, in sawing blocks for his own use, or whether he was engaged in sawing blocks for some one else; and if you find from the evidence and circumstances surrounding the case, as

shown to you here in the evidence, that the sawing off of these blocks was for his own use, and if you find that the plaintiff, sawing them off at the time he lost his hand, was incident to his ordinary occupation, you will be at liberty still to find for the plaintiff. Nearly every man, whatever his occupation, in the ordinary affairs of life, occasionally does an act or thing in connection with his ordinary avocation which might also pertain to some other occupation. For instance, the man insured in this company as a bank cashier might, while engaged in chopping his own firewood, accidentally cut his foot with an ax, and still it would not necessarily follow that he had changed his occupation from a bank cashier to a wood chopper. This chopping his own wood could be an incident to his occupation as a bank cashier, although it might also be an incident to the occupation of woodchopping. The same rule would hold in regard to sawing off blocks from a board. A man insured as a bank cashier might, for his own use, desire or engage in sawing off blocks from a board, and still it would not necessarily follow that for that reason he had changed his occupation, or was engaged in an act pertaining to a profession, occupation, or exposure not classed in this policy as a preferred occupation. As I stated above, this is a question of fact for you to decide from all the evidence that has been introduced in the case. Of course, if you do not find from the evidence that the plaintiff was engaged in the act of sawing when he lost his hand, you will have no occasion to inquire further on this branch of the case. It is claimed by the plaintiff that he had quit sawing a few minutes before the accident. If you find from the evidence that this was the case, then it would be entirely immaterial whether some time before the accident he had been engaged in an act of sawing. That question becomes material only in case you find that he was actually engaged in operating the saw at the time he lost his hand."

We think the case in principle is like the case of *John Hancock Mut. Life Ins. Co.* v. *Moore,* 34 Mich. 45.

This brings us to a consideration of the question whether, when the insured has shown the injury to be the result of an accident, the burden is then upon the defendant to show, by way of defense, that the accident was

within the exceptions named in the certificate of insurance. We think this question must be answered in the affirmative. *Freeman* v. *Insurance Co.*, 144 Mass. 572. In this case the court cited with approval from *Piedmont, etc., Ins. Co.* v. *Ewing*, 92 U. S. 377, as follows:

"In an action upon a policy which contains many provisos and conditions there is a practical wisdom, which courts have recognized, in compelling the insurance company to allege and prove the want of compliance with any particular proviso or condition on which it relies."

See, also, Nibl. Acc. Ins. & Ben. Soc. § 366, p. 707, and cases there cited; *John Hancock Mut. Life Ins. Co.* v. *Moore*, 34 Mich. 45.

It is urged that plaintiff cannot recover, because he voluntarily exposed himself to unnecessary danger, and his injury was the result of his own negligence. In relation to this defense, the judge charged the jury, after calling their attention to the provisions contained in the certificate of insurance:

"A member of this company must not be negligent; and if he receives injuries through his own carelessness or negligence, or rather contributory negligence, he could not recover under this policy, because he agrees to use all due diligence for his personal safety and protection. In other words, he must be ordinarily diligent in trying to protect himself. He cannot be negligent, and run into danger, and then charge the company, if he does it deliberately. Negligence, in its legal sense, is no more or less than a failure to observe fully that degree of care, precaution, and diligence which the circumstances justly demand whereby an injury is occasioned. It means the doing of something which a person of ordinary care, prudence, and discretion would not do under the particular circumstances, whereby an injury is occasioned. If you find in this case that there was negligence in such a degree as I have mentioned, negligence on the part of the plaintiff as I shall hereafter instruct you, he could not recover. * * * If an injury occurred within either of these exceptions I have read to you, there could be no recovery, because the terms of the policy exclude such injuries. For, if the person is injured under this policy

while voluntarily exposing himself to unnecessary danger, it would not be accidental.   *   *   *   A condition of the certificate is to the effect that insurance under said policy or certificate shall not extend to or cover accidental injuries caused by the insured voluntarily exposing himself to unnecessary danger; and the defendant claims, under this condition and provision, the plaintiff cannot recover in this case.   In order for the defendant to successfully defend under this condition, it must show by a preponderance of the evidence that the plaintiff did voluntarily expose himself to unnecessary danger at the time of the loss of his hand.   I charge you, as a matter of law, that he did not voluntarily expose himself to unnecessary danger by going into Beckley & Austin's planing mill.   The mere going into the planing mill could not be such an exposure; and whether, while in there, he exposed himself voluntarily to unnecessary danger is a question of fact for you to determine, and the burden of proof is on the defendant to show that the plaintiff did so expose himself.   Upon this question I charge you that the plaintiff had a right to go into the planing mill; and if, while in there, he conducted himself as a man of ordinary prudence and caution would conduct himself under like circumstances, then he cannot be said to have voluntarily exposed himself to unnecessary danger; and the burden of proof is upon the defendant to show that the plaintiff, while in the planing mill, did not conduct himself as a man of ordinary prudence and caution would or should conduct himself.   It is claimed in this case by the defendant that the plaintiff purposely and intentionally sawed off his hand.   If he intentionally and purposely sawed off his hand, of course he cannot recover in this case.   This is, however, entirely a question of fact for you to determine; and I charge you also that, on this proposition, the burden of proof is on the defendant to show that the plaintiff did intentionally and purposely saw off his hand.   It is for you to say whether, under the evidence in this case, the defendant has proved that question by a preponderance of the evidence.

"I also instruct you on the part of the defense:   The plaintiff must prove by a preponderance of evidence that the injuries for which he seeks to recover were received from external, violent, and accidental means within the provision and outside of the exceptions of the policy upon which this suit is brought.   He must satisfy you that he

did not voluntarily expose himself to unnecessary danger, and also that he was not injured while doing or performing any act or thing pertaining to any occupation classed by the defendant association as more hazardous an occupation than the occupation under which the contract sued upon was issued, plaintiff having been insured as cashier of the First National Bank. If the plaintiff fails to prove either one of these elements, it will be your duty to render a verdict for the defendant. If the plaintiff voluntarily exposed himself to unnecessary danger, your verdict must be for the defendant. By the words 'doing or performing' anything pertaining to an occupation classed by the defendant association as more hazardous than the occupation under which the contract sued upon was issued, is meant any act naturally belonging to or done by a man engaged in that occupation. It was not necessary for the plaintiff to be engaged in the actual act of sawing. For the purposes of this case, any act naturally done by a man who acts as a sawyer, whether of preparation for the act of sawing or done after the act of sawing, is an act pertaining to the occupation of a sawyer. Again, if the injury to the plaintiff resulted in whole or in part from his own negligence, then he cannot recover. Again, if the plaintiff stood leaning against the table, and his foot slipped, so as to throw him or his arm upon the table, causing this injury, he was guilty of negligence, and cannot recover. The plaintiff must prove by a preponderance of the evidence that the injuries for which he seeks to recover were received from external, violent, and accidental means, within the provisions and outside of the exceptions of the policy upon which this suit is brought. That, you understand, would be the law governing this particular contract. This injury, if at all, must be external, it must be violent, and it must be by accident; and the plaintiff is bound to show that. If the plaintiff voluntarily exposed himself to unnecessary danger, of course your verdict must be for the defendant."

He also charged the jury:

"Now, gentlemen, one very important question that arises for your consideration in this case is, Was this injury received by Mr. Hess because he voluntarily exposed himself to unnecessary danger? If you shall find in the affirmative of this proposition, that ends this case, and your verdict should be for the defendant, 'No

cause of action.' And this question is for you to determine under all the evidence in the case. If you so find upon the affirmative of that proposition, then the defendant should prevail. Was this act of Mr. Hess a voluntary exposure to unnecessary danger? To make him guilty of a voluntary exposure to unnecessary danger, he must intentionally have done some act which a reasonable, ordinary, and prudent person would pronounce dangerous. The undisputed evidence shows that he went into this planing mill on a matter of business between himself and the proprietor. The evidence also shows that other persons were at the time in the mill, and there is some evidence that it was not an unusual thing for persons having business there to go into that mill, and transact business with the proprietors or their servants, as the case might be. Now, it is true that Mr. Hess voluntarily went into this planing mill, but there is a clean distinction between a voluntary act and a voluntary exposure to danger. The approach to an unknown or unexpected danger does not make the act voluntary exposure thereto. The result of the act does not necessarily determine the motives which prompted the action. The act may be voluntary, yet the exposure may be involuntary. As I said before, these are matters for you to determine under all the circumstances surrounding this case, and in the light of the evidence as you find it."

So far as the question of the negligence of the plaintiff is involved, the charge was quite as favorable for the defendant as it was entitled to have it made. See Nibl. Acc. Ins. & Ben. Soc. § 366; *Freeman* v. *Insurance Co.*, 144 Mass. 572; *Tucker* v. *Mutual Ben. Life Co.*, 50 Hun, 50; *Providence, etc., Invmt. Co.* v. *Martin*, 32 Md. 310; *Fidelity & Casualty Co.* v. *Chambers*, 93 Va. 138; *Keene* v. *Accident Ass'n*, 161 Mass. 149; *Equitable Accident Ins. Co.* v. *Osborn*, 90 Ala. 201; *Schneider* v. *Insurance Co.*, 24 Wis. 28 (1 Am. Rep. 157); *Hess* v. *Van Auken*, (Com. Pl.) 32 N. Y. Supp. 126; *Manufacturers' Accident Indemnity Co.* v. *Dorgan*, 7 C. C. A. 581, 58 Fed. 945; 2 May, Ins. § 530. It is urged that this charge is inconsistent with itself. So far as this criticism is well taken, it grows out of the fact that the circuit judge gave some of the requests to charge on the

part of the defendant which were more favorable to it than the law would justify.  So far as there was error in the charge as given, it was in the defendant's favor, and it cannot complain.

The error assigned in relation to the admission of testimony we do not think it necessary to discuss, as we are satisfied it is not well taken.

Judgment is affirmed.

Long, C. J., Montgomery and Hooker, JJ., concurred with Moore, J.

Grant, J. (*dissenting*).  I cannot concur in that part of my Brother Moore's opinion wherein he approves the following charge of the court:

"In considering the question as to whether the plaintiff was engaged in any profession, employment, or exposure not rated in the policy as a preferred occupation at the time he lost his hand, I charge you that engaging in an occupation on the part of the person insured against injury by accident does not mean a casual engaging, such as most men do, or may do, or may resort to during the intervals of time when their usual employment does not engage them, but rather to engaging in such employment as a usual business; and, even though you find that the plaintiff incidentally engaged in sawing off blocks from boards at the time he lost his hand, you would not, for that reason, be required to find that he was injured while engaged in a profession, occupation, or exposure not rated in the policy as a preferred occupation.  The language of this condition of the policy must meet with a reasonable construction at your hands.  If the plaintiff was actually engaged in sawing blocks at the time he lost his hand, it will then be a question of fact for you to determine whether this act was one that pertained incidentally to his regular occupation, or whether it pertained to that more hazardous occupation not classed as preferred, with the burden of proof on this issue upon the defendant.  In determining this question you can and should take into consideration whether, under the evidence, the plaintiff was engaged, if you find he was engaged, at the time of the injury, in sawing blocks for his own use, or whether he was engaged in sawing blocks for some one else; and

if you find from the evidence and circumstances surrounding the case, as shown to you here in the evidence, that the sawing off of these blocks was for his own use, and if you find that the plaintiff, sawing them off at the time he lost his hand, was incident to his ordinary occupation, you will be at liberty still to find for the plaintiff. Nearly every man, whatever his occupation, in the ordinary affairs of life occasionally does an act or thing in connection with his ordinary avocation which might also pertain to some other occupation. For instance, the man insured in this company as a bank cashier might, while engaged in chopping his own firewood, accidentally cut his foot with an ax, and still it would not necessarily follow that he had changed his occupation from a bank cashier to a woodchopper. This chopping his own wood could be an incident to his occupation as a bank cashier, although it might also be an incident to the occupation of wood chopping. The same rule would hold in regard to sawing off blocks from a board. A man insured as a bank cashier might, for his own use, desire or engage in sawing off blocks from a board, and still it would not necessarily follow that for that reason he had changed his occupation, or was engaged in an act pertaining to a profession, occupation, or exposure not classed in this policy as a preferred occupation."

The policy of insurance prohibited plaintiff from engaging "in any profession, employment, or exposure not herein rated as a preferred occupation." I recognize the rule that such a policy is not avoided when the insured engages in those acts which are common to those engaged in the occupations referred to, or, in other words, are common to mankind. As the learned circuit judge said, the plaintiff might chop his own firewood, he might saw off blocks from a board with a wood or hand saw, but it is different when he, goes into a dangerous place and assumes to run a dangerous machine with which he is unfamiliar. Plaintiff might, without avoiding his policy, go out in his row boat; but if he should deliberately undertake to shoot a dangerous rapids he would voluntarily expose himself in a manner not authorized by his policy. A man may enter his own manufactory, or that

of another, to observe the engine or other machinery, without avoiding such a policy; but if he should undertake to manage the engine, either for pleasure or business, he would then become "engaged in an exposure" prohibited. Fishing, hunting, boating, wood chopping, and many other like acts which men usually do are not prohibited by these policies; but the rule cannot be extended to include every danger and risk to which the insured may see fit to expose himself. · This case is parallel to *Knapp* v. *Accident Ass'n*, 53 Hun, 84, wherein the plaintiff was attempting to operate a buzz-saw. The court said: "The work of operating a buzz-saw is proverbially dangerous, and is probably not less so when engaged in for amusement than when practiced as a business or occupation." It appears to me contrary to reason to hold that an insured may, for amusement or temporary utility, expose himself to a risk far more dangerous to him than to one who is engaged in the business. The court should have instructed the jury that if this injury occurred while he was using the saw he could not recover. Counsel cite the case of *Hess* v. *Van Auken*, (Com. Pl.) 32 N. Y. Supp. 126,— another case growing out of this same accident. This point, however, was not involved in that case. The contrary request was preferred in that case, and refused. The ruling was sustained upon the ground that there was no evidence upon which to base it. That is not this case. There was evidence from which the jury might have found that plaintiff was injured while using the saw.

For this error I think the case should be reversed, and a new trial ordered.