## ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. ELLIOTT.
### No. 6228.

Circuit Court of Appeals, Sixth Circuit.
May 17, 1933.

W. W. King, Jr., of Jackson, Mich. (E. W. Dillon, of Columbus, Ohio, Bisbee, McKone, Wilson & King, of Jackson, Mich., Angell, Turner, Dyer & Meek, of Detroit, Mich., on the brief), for appellant.

J. A. Rosenburg, of Jackson, Mich., and H. M. Shapero, of Detroit, Mich. (Rosenburg & Painter, of Jackson, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judge.

HICKS, Circuit Judge.

This suit was upon an insurance contract between appellant, a fraternal benefit society, and George Elliott, deceased husband of appellee. By its assignments of error appellant contests the denial of its motion for a directed verdict made at the close of appellee's evidence and the denial of a similar motion made at the close of all the evidence.

We need not give consideration to the denial of the motion at the close of appellee's evidence because, by afterwards introducing evidence in its own behalf, appellant waived its motion. Accident Ins. Co. v. Crandal, 120

U. S. 527, 530, 7 S. Ct. 685, 30 L. Ed. 740; Manufacturers' Accident Ind. Co. v. Dorgan (C. C. A. 6) 58 F. 945, 949, 22 L. R. A. 620.

The certificate of insurance, which together with the application, and the constitution, by-laws, and articles of incorporation of appellant, constitute the contract, contains the following provision: "Insured members shall be indemnified, in accordance with the terms hereinafter set out in this article, against the results of bodily injury hereinafter mentioned affected through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes."

Appellee introduced evidence tending to show that on March 27, 1929, Elliott, a collector, about sixty years of age, ate his breakfast at home in Jackson, Mich., left in his automobile, came back for lunch, and again left home in the car in the discharge of his usual duties; that the general condition of his health was good; that he made no complaint of being ill and that when he left home after lunch there were no marks upon his body and that his automobile was not damaged; that about 4:30 in the afternoon while driving north on Jackson avenue at the rate of about twenty miles an hour his automobile collided with a street car coming in the opposite direction at the rate of about five miles an hour and turning east on to Michigan avenue; that before the collision Elliott, who was riding in a normal position with his hands on the steering wheel, was seen to put on the brakes and turn the car to the left as if to avoid the collision; that the impact caused a loud crash; that Elliott's body suddenly lurched forward and his head struck the steering wheel; that he became unconscious and remained so until he died about four days later; that as a result of the collision the right fender of Elliott's car was destroyed, the right headlight and the spindle connecting the two headlights bent back, and the apron in front of the car and the front axle bent; that Elliott suffered a contusion on the right temple about two inches long and half an inch wide; that the lobe of his right ear was bruised; and that there was a scratch on his left cheek.

We think the natural inference from this evidence is that Elliott's death resulted from a purely accidental injury received in the collision of his automobile with the street car and if so was sufficient to require the submission of the case to the jury. Appellant conceded as much. At the close of all the evidence counsel said: "Now, if the court please, at

the opening of plaintiff's case, they showed an accident, four days' unconsciousness and death. The burden thereupon became upon defendant to show that the death fell within one of the exceptions, to wit, that it is a case of cerebral hemorrhage."

Upon the question of the burden of proof in such a situation, we cite, without discussing, the following cases: Western Assur. Co. v. J. H. Mohlman Co. (C. C. A. 2) 83 F. 811, 813, 40 L. R. A. 561; American Merchant Marine Ins. Co. v. Liberty Sand & Gravel Co., 282 F. 514, 517 (C. C. A. 3); Cotten v. Fid. & Cas. Co., 41 F. 506, 511 (C. C.); Hess v. Preferred Masonic Mut. Acc. Ass'n, 112 Mich. 196, 203, 70 N. W. 460, 40 L. R. A. 444; N. & M. Friedman Co. v. Atlas Assur. Co., 133 Mich. 212, 217, 94 N. W. 757.

Under its plea of the general issue appellant gave notice that it would rely upon an exemption clause not only included in the certificate but in its constitution and by-laws, the relevant feature of which is as follows: "Nor shall such benefits cover or extend to any one of the following conditions, whether caused by accidental means or not, to wit * * * cerebral * * * hemorrhage * * *."

Appellant's insistence was that cerebral hemorrhage was the cause of Elliott's death and that he was not indemnified because his death fell within the above-quoted exception. In support of its position appellant introduced evidence tending to show that about two weeks after Elliott's death an autopsy revealed a cerebral hemorrhage in the nature of a blood clot about the size of a hen's egg near the center of the left hemisphere of the brain; that the skull was not fractured and that the coverings between the skull and the brain did not appear to have been injured; that the arteries at the base of the brain were found to be sclerosed and that there was a slight sclerosis of the aorta.

In addition appellant introduced the testimony of four physicians, all of whom were present at the autopsy, and none of whom attached great significance to the sclerotic condition of the aorta and the blood vessels, because arteriosclerosis is not uncommon in one of Elliott's age. Their opinion, however, was that Elliott's death was caused by cerebral hemorrhage or apoplexy.

If we assume with appellant that cerebral hemorrhage or apoplexy, whether brought about by the collision or not, was the cause of death, we must, to justify a directed verdict, conclude that the testimony of these physicians was of sufficient probative force to destroy the effect of all other countervailing evidence. We do not think that such a result follows, for appellee introduced the testimony of three physicians who agreed that concussion of the brain caused by a blow, as distinguished from cerebral hemorrhage, could cause death without a fracture of the skull or any physical evidence of the blow, and that one of the manifestations of fatal concussion is continued unconsciousness. The evidence, it seems to us, was of such substantial character as to justify a finding that the injury and death was not caused by cerebral hemorrhage but by concussion of the brain received in the collision with the street car.

Upon the record we cannot say as a matter of law that appellant has so certainly shown that Elliott's death was caused by cerebral hemorrhage as to entitle it to a directed verdict.

Judgment affirmed.