## TRAVELERS' INS. CO. OF HARTFORD, CONN., v. DINER.
### No. 6542.

Circuit Court of Appeals, Sixth Circuit.
Feb. 11, 1935.

W. N. Snow, of Grand Rapids, Mich. (Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., on the brief), for appellant.

Walter M. Nelson, of Cincinnati, Ohio (Dale Souter, of Grand Rapids, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

**4**

HICKS, Circuit Judge.

Suit upon a policy of accident insurance, issued on behalf of Frank J. Diner, who died while it was in force. The policy carried a supplement covering injuries sustained while riding in or operating a private automobile. Appellant challenges the denial of a directed verdict in its behalf.

The policy insured Diner "against bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means * * *." In view of this provision, the question is, whether there was sufficient evidence to justify the submission of the case to the jury.

Diner was sixty-two years of age, five feet, seven inches tall, and weighed about two hundred and twenty pounds. He lived in Detroit and as manager of a manufacturers' association had an office there. In the last year of his life he developed a slight diabetic condition, which, upon the advice of a physician, was alleviated by corrective diet.

On July 24, 1932, in company with Mrs. Diner, he drove from Detroit in an automobile to the farm of his son-in-law near Hart, Mich., a distance of two hundred and forty-five miles. He remained there on vacation during the ensuing week and engaged in various activities. Unaided he built a boathouse, repaired a granary and some chicken pens, and constructed the approach to a barn out of heavy planking. He helped with various chores about the farm. During the entire week he was cheerful, ate heartily, slept well, and showed no indication of illness. On Thursday evening he attended a social function in the neighborhood where he remained until about midnight. On Sunday morning, July 31, about 9:30 he, with Mrs. Diner, started for Detroit. Upon reaching Muskegon and while driving about fifteen miles per hour, and turning from Marquette street into Getty avenue, the right lens of the colored glasses he was wearing dropped out. The sunlight blinded him, and he lost control of the car, which collided with the concrete base of a gasoline station. This base, three feet wide and six feet long, weighing about three hundred pounds, and imbedded in cinders and gravel, was displaced about three inches by the impact. The two pumps which it supported, each of which weighed about three hundred pounds, were tipped over and their connecting pipes broken. The bumper of the car was snapped off. Mrs. Diner was thrown upward in the car and her clothing torn. Diner was thrown against the steering wheel and then against the top of the car, and falling back into the seat, sat motionless and senseless for about five minutes. Mrs. Diner offered him water which he refused. He then got out of the car without speaking, stood nearby about ten minutes, walked around the car, and then re-entered it and sat down. During this period he was pale and nervous and perspired freely. In about an hour the owner of the station arrived, and after some conversation with him Diner gave him his card and drove away. Before he had driven a mile he was forced to stop and rest for nearly an hour. After other and frequent stops for rest he reached home about 9 p. m. He was restless during the night, ate very little breakfast, drove the car to a garage about 10 o'clock, then went to his office, and from there returned home about 2 or 3 o'clock. He talked very little, was dispirited, did nothing but sit around the house, and again spent a restless night. He conducted himself in the same general manner for the remainder of the week, but on Saturday, with his wife, drove the car again to the home of his son-in-law, where, after again stopping many times for rest, he arrived about 6 o'clock.

During the following week he did no work about the farm, was irritable and cross, lost appetite, spent sleepless nights, and complained of dizziness and headache. His appearance was that of one in pain. On Saturday of that week he complained that he could not see well, and failed to recognize a friend who was standing within a foot of him. On that afternoon he went with a fishing party to a lake but declined to go out in the boat and fished from the bank. While he was walking along the shore he fell but recovered himself, and after sitting down for a while drove his car alone to the farmhouse. Before finishing his evening meal he left the house but soon returned and joined a bridge party for perhaps an hour, when he excused himself and went out again, but came back about 10:30 and retired. About 4 o'clock the next morning he was observed to be breathing heavily and could not be aroused. Another attempt to arouse him about 6:30 failed and a physician was called. The physician, in view of his diabetic history, administered insulin but without avail. Hourly tests were made of the urine, and the first examination disclosed some sugar but later ones indicated that it was free from sugar. He was taken to a

hospital on Sunday afternoon, became progressively worse, and died there about 4 o'clock the following morning.

On September 8th an autopsy was performed and the basilar artery, including the lower portions of the two upper branches, was found to be completely occluded by a blood clot or thrombus. The artery was badly diseased by sclerosis. There were atheromatous patches in its lining and some of these patches were overlaid with ulcers. The pons, which is normally supplied with blood from the branches of this artery, was found to be in a softened and degenerated condition.

It is conceded: (1) That the thrombus was the cause of death; and (2) that the collision was per se substantial evidence of injury by "external, violent and accidental means."

Upon the motion for a verdict the determinative question, therefore, was whether there was substantial evidence tending to show that the thrombus was caused by the collision directly and independently of all other causes. The physician who attended Diner during his last hours and who was also present at the autopsy gave it as his opinion that the thrombus undoubtedly started at the time of the collision. Another physician, not present at the autopsy, but examined as an expert, testified in substance that in his opinion the shock and concussion incident to the impact caused a lowering of the blood pressure and a slowing down of the blood stream through the artery; that as a consequence there was an accumulation or piling up of blood cells or platelets one upon another in the artery until it was completely blocked. He testified that it was the teaching of pathology "the world over" that a definite slowing down of the blood stream could form a thrombus. He further testified that because of the insufficient blood supply the atheromatous patches upon the lining of the artery began to break down, and caused the ulcerated areas thereon.

We think that the evidence of these two physicians taken in connection with the undisputed facts substantially tend to show that the accident was the sole cause of Diner's death. Their conclusions are attacked by three physicians, who were present at the autopsy, one of whom performed it. They were of the opinion that the thrombus was directly caused by the formation and development of ulcers upon the atheromatous patches or that these ulcers at least contributed thereto; that the patches were due to arteriosclerosis, which, in turn, was probably caused by diabetes.

We do not think that this testimony justified a directed verdict. It was not of sufficient probative force to destroy the effect of the countervailing evidence. Order of United Commercial Travelers v. Elliott, 65 F. (2d) 79 (C. C. A. 6). It was weakened by the evidence tending to show the absence of any outward symptoms of thrombosis prior to the accident and definite and progressive manifestations immediately thereafter. The utmost that may be said for it is that it contradicted appellee's evidence and created an issue properly to be determined by the jury. New Amsterdam Cas. Co. v. Shields, 155 F. 54 (C. C. A. 6); Jefferson Standard Life Ins. Co. v. Lightsey, 49 F.(2d) 586, 588 (C. C. A. 4); Aetna Life Ins. Co. v. Allen, 32 F.(2d) 490, 492 (C. C. A. 1). The denial of the motion to direct a verdict was therefore proper.

Appellant complains of alleged errors in the charge. The exception to the charge was not only too general to be made a basis for review, but upon an examination of the excerpts complained of we think that they plainly involve no reversible error. U. S. C. tit. 28, § 391 (28 USCA § 391).

■ It is urged that the following request should have been given to the jury, to wit:

"The evidence in this case is undisputed that at the time of the automobile accident on July 31, 1932, the insured was then suffering from a pre-existing disease called arterio-sclerosis, which had then developed to the point where it had produced in the basilar artery so-called atheromatous patches, which had in turn become ulcerated."

The proposed instruction is without merit. As above indicated, it was not conclusively shown that the atheromatous patches were ulcerating at the time of the accident, nor even that they were then present in the artery.

Judgment affirmed.