## SOUTHERN EXTRACT CO. v. GREEN.
### No. 7779.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1939.

Forrest Andrews, of Knoxville, Tenn., for appellant.

J. H. Hodges, of Knoxville, Tenn., (Hodges & Doughty, of Knoxville, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and AL- LEN, Circuit Judges.

HICKS, Circuit Judge.

Suit by Rosalie Green, appellee, to recover of Southern Extract Company, appellant, certain benefits allegedly due by reason of injuries to her husband, Robert C. Green by accident, arising out of and in the course of his employment by appellant, and resulting in his death. The case was tried by the court without a jury.

It was conceded that Green was an employee of appellant and that he died of osteomyelitis. At the close of all the evidence appellant moved for a judgment in its favor and requested findings, (1) that Green suffered no accidental injury growing out of the course of his employment; and (2) that his death from osteomyelitis was not caused or induced by an accidental injury growing out of or in the course of his employment. The court overruled the motion for a judgment and denied the re-

quests. He found the facts to be directly to the contrary, and entered judgment for appellee.

■ Our question is, whether there was substantial evidence tending to support appellee's claim. U. S. v. Jefferson Elec. Co., 291 U.S. 386, 407, 54 S.Ct. 443, 78 L.Ed. 859.

There are certain undisputed facts. Green, forty-five years of age, and weighing 180 pounds, had been employed by appellant about three years as a welder. He had had no previous sickness. On Sunday morning, December 4, 1932, he left home to do some repair work at appellant's plant. He was then apparently in good health and as he walked away from the house he was not limping or having any trouble with his legs. Prior to that date he had never been observed to limp nor heard to complain.

The witness, Harris, testified that he saw Green at the plant that morning before he went to work; that he saw him walk and that he got about all right. Harris further testified:

"The first thing that came to my attention that morning was that he came into the machine shop; he had started to the hydrant to get a drink of water; I noticed that he was limping.

"Q. Did you notice anything about him? A. Well, nothing any more than he was telling me about how he fell, me and Mr. England, that he slipped. * * * Mr. England is the time-keeper and also is first aid man for the defendant company and you are supposed to report an accident to him.

"Q. Did this man Green report this accident to him there in your presence, that morning? A. He told us both, the first he said, 'I damn near split myself open over there a while ago.' I said 'Bob, you better be careful; how did you do that?' He said, 'I slipped, between No. 1 and No. 2 digesters'. * * *

"Q. What was his condition when talking to you and Mr. England, the first aid man of the defendant? A. As well as I can recall it, he turned around against the cupboard by the side of the sink and placed his foot upon the cupboard and leaned back against his heel like that" (indicating) "when he was telling us and he acted as if he was in pain, but he did not say any more than what he said about him splitting himself open. * * * A. He told

me the **morning** that he got hurt when he was talking to Mr. England, that he slipped and one foot went one way and one the other. * * *"

Harris testified, that it was approximately 225 feet from the digester room where Green worked to the point where he came, limping, and talked to the witness and to England; that he entered the door of the machine shop opening toward the digester room, that he, Harris, knew where the digesters were located and that the floor between them was wet and slippery.

The court excluded the testimony of Harris that Green said, "I damn near split myself open over there a while ago * * * I slipped between No. 1 and No. 2 digesters * * *" upon the ground that this statement was not a part of the res gestae, but found for appellee upon a consideration of the admitted evidence.

■ We need not determine whether the evidence admitted was alone sufficient to support the finding. The excluded evidence should have been admitted. Green's statement was made after he came limping from the slippery floor into the machine shop and while he was in pain—it was the first statement made to Harris and England. It was "a part of the 'whole res gestae.'" It tended to show the reality, cause and character of his injury. See Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 407, 19 L.Ed. 437, et seq.

■ When this statement is considered in connection with all other testimony, the evidence in the aggregate was obviously sufficient to support the finding that Green was injured in the course of his employment. The finding was right and is not reversible, because, forsooth, it might have been founded upon more substantial grounds. See Yazoo & M. V. R. Co. v. Mullins, 249 U.S. 531, 532, 39 S.Ct. 368, 63 L.Ed. 754, and cases there cited.

■ Green worked during the week of December 4 but continued to limp and complain of the pain. When he was at home appellee, from time to time, applied domestic remedies, such as alcohol, turpentine, hot towels and electric pads but without avail. Dr. Peters was called on December 10 and found him in bed suffering excruciating pain in his left knee, although the knee was normal in appearance. The same condition existed on the 11th. When Dr. Peters saw him on the 12th he had a temperature of 101-2/5. He was taken

to the hospital on December 15, where his case was diagnosed as osteomyelitis. He underwent amputation of his left leg and continued in the hospital until January 20, when he died.

On January 5 an X-ray photograph was taken which disclosed that that portion of the left thigh bone just above its lower head was affected, there was some destruction of the bone, although the knee itself was normal in appearance. There is substantial evidence that one source of osteomyelitis is traumatic; that it causes an elevation in temperature; that it affects the bone as the name indicates; that it is an infection of the marrow and that in its course there may be a degeneration of the bony substance; that it may be brought on by a sudden wrench or muscular twist and that one of its symptoms is that it develops suddenly with pain. A physician introduced by appellee saw a connection between Green's fall and the osteomyelitis. Two physicians called by appellant took a contrary view but their testimony was not of sufficient force to destroy appellee's evidence. It only created an issue to be determined by the court. See Travelers' Ins. Co. v. Diner, 6 Cir., 75 F.2d 3, 5. There is no indication that Green was injured prior to December 4; but after that date manifestations of injury were definite and progressive.

We think there is substantial evidence tending to show that the disease which caused his death was due to his fall in the course of his employment.

Judgment affirmed.