STATE LIFE INSURANCE COMPANY *v.* FORD.

Opinion delivered January 8, 1912.

1. CONTINUANCE—SUFFICIENCY OF AFFIDAVIT.—Under Kirby's Digest sec. 6173, providing that in motions for continuance the affidavit must show what facts the affiant believes the absent witness whose testimony is sought will prove, and not merely the effect of such facts in evidence, and that the affiant himself believes them to be true, a motion for continuance which shows that affiant has not been able to communicate

with. the witness and therefore did not know what she would testify is insufficient. (Page 518.)

2. SAME—ABSENT WITNESS—WHEN MOTION PROPERLY DENIED.—Where a motion for continuance does not show why the deposition of an absent and nonresident witness was not obtained nor any likelihood that her attendance or testimony could be secured by means of a continuance, the motion was properly denied. (Page 519.)

3. SAME—WHEN PROPERLY DENIED.—In an action on a policy of life insurance where the defendant asks a continuance upon the ground that he could not prepare a defense because the plaintiff did not file the original policy or a copy of it, a continuance was properly denied where it is not stated that the defendant did not have a copy of the policy, nor that any change had been made in the policy after it was delivered to the assured. (Page 520.)

4. SAME—WHEN PROPERLY DENIED.—Defendant was not entitled to a continuance because plaintiff took the deposition of a witness a short time before the court convened where plaintiff might have waited until the trial and produced the witness in court. (Page 520.)

5. INSURANCE—DEATH THROUGH EXTERNAL, VIOLENT AND ACCIDENTAL MEANS.—Where the undisputed testimony established that assured met his death through external, violent and accidental means, it was not error to refuse to submit to the jury the question whether his death was accidental. (Page 520.)

6. PARTIES—JOINDER.—The sureties on the bond of an insurance company may be joined as defendants in an action against the insurance company to recover on a policy issued by it. (Page 521.)

7. INSURANCE—SUIT ON BOND—CITIZENSHIP OF ASSURED.—Where the bond sued on was conditioned to pay all claims arising or accruing to any person by virtue of any policy issued by the insurance company upon the life of any citizen of Arkansas, though the insured in his application recited that he was a resident of Louisiana, it was admissible to prove that he was a citizen of Arkansas. (Page 521.)

8. APPEAL AND ERROR—FAILURE TO INSTRUCT—REQUEST.—The failure of the trial court to submit an issue to the jury was not error where no instruction upon that issue was requested. (Page 522.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an action brought by Joeanna Ford against the State Life Insurance Company of Indianapolis, Indiana, and its bond to recover on a policy of insurance, issued by said Life Insurance Company to her son, Samuel Edward Ford.

The policy contained, among others, the following provision:

"During the premium-paying period of this policy, and excluding any time while the same may be in force as extended insurance, all premiums having been duly paid, and this policy being then in force, in the event of the death of the insured, resulting from bodily injury, sustained and effected directly through external, violent and accidental means (suicide, sane or insane, not included) exclusively and independently of all other causes, provided such death shall occur within ninety days from the date of the accident, the company will pay to the beneficiary or beneficiaries hereunder, in addition to the amount otherwise due, the sum of two thousand dollars."

The plaintiff was the mother of the assured, and was the beneficiary named in the policy. The death of the assured was caused by a gunshot wound, and he died in about thirty minutes after being shot. The policy was in force at the time of his death.

According to the testimony of J. F. Ball, it appears that Samuel E. Ford was an employee in his office. Miss Carrie Pritchard came into the office crying, and said to Ball: "Mr. Ball, Mr. Ford accuses me of having reported the tale that is being circulated that Miss Taylor is in the habit of spending two or three hours every day with you locked up in your office." Ford was sitting down when she made this statement. She and Ford had a short quarrel, and she denied having made the statements attributed to her by Ford. The latter said: "You are a liar; you did say it." Miss Pritchard then said: "Ford, you are the biggest liar I ever heard speak; you know I didn't say it." Ford replied: "You damned little whore, you can't call me a liar! I will break your neck with this chair." He arose from his chair, and placed his hands on the back of it as if to strike her, and she immediately walked around him. "I told Ford not to strike her. Ford made no further attempt to strike her, but stood there with hands still on the chair. Miss Pritchard had turned her back on Ford as he was arising from his chair, she took a pistol from her handbag while her back was to Ford, turning around she pushed the pistol in Mr Ford's face and fired. She had walked around Ford four or five steps, but got no further away from him than she was when the quarrel began. She had walked around behind his chair and

stood looking out of the window in an unconcerned manner, and then turned in her tracks and shot Ford."

We quote from his testimony as follows:

"Q. Did Mr. Ford continue to have hold of the chair?

"A. After I spoke to him asking him not to strike her, he made no further pretense to strike her.

"Q. But did he or did he not retain his hold on the chair and maintain his position?

"A. He did, but just at this time the gun fired."

Again he stated that at the time Miss Pritchard fired Ford was not making any hostile demonstration towards her. He also says that Miss Pritchard had nothing in her hand except a small handbag when she came into the office, and that he had no intimation that she had a pistol until just as she fired, and that he had a better opportunity to see what she had in her hands than Ford, for he was at all times facing her and Ford was not.

Ball was doing business at Pollock, La., and Ford had been working for him about two and a half years when he was killed.

The policy bears date of March 7, 1910, and recites that it insures the life of Samuel Edward Ford, of Pollock, State of Louisiana.

The plaintiff testified that her son was a single man, and while he worked in Louisiana he still retained his home in Arkansas, and that he had no other home except her house in Searcy, Arkansas.

There was trial before a jury, and a verdict for the plaintiff The defendants have appealed.

*J. N. Rachels,* for appellants.

1. Because the pleadings were not complete until the day of the trial, and appellant did not have time to meet the issues after plaintiff took her proof and appellant's attorney, who was forced to sit in the trial, could not, for lack of time, prepare a proper defense, the court abused its discretion in overruling the motion for a continuance. Kirby's Digest, § 1650; 69 Ark. 368; 67 Ark. 142; 79 Ark. 178; 71 Ark. 197; 78 Ark. 536; 77 Ark. 23; 80 Ark 376; 85 Ark. 334; 88 Ark. 177; 89 Ark. 129; 90 Ark. 78; 94 Ark. 430; 94 Ark. 538.

2. Where a policy by its terms covenants to pay a stated amount in the event of the death of the insured resulting from

bodily injury sustained and effected through external, violent and accidental means, exclusively and independently of all other causes, and excepts from the risks covered by such policy the death of the insured by his own hand or act, or in consequence of the *violation of law,* and the facts in evidence show that insured came to his death from a pistol shot wound received at the hands of another with whom he had quarreled and whom he was in the act of assaulting with a deadly weapon, there is no liability on the part of the insurer. Black's Law & Practice on Accident Cases, § § 1, 8; 1 Am. & Eng. Enc. of L., (2 ed.), 274 and cases cited; *Id.* 319 and cases cited; 4 *Id.* 307; Webster, Dict. "Accident;" 1 Rapalje, Law Dict.; 13 Allen (Mass.) 308; 99 Mass. 318; 45 N. Y. 422; 95 Mo. 506; 97 Ind. 478; 99 N. Y. 614; 48 Am. Rep. 658; 120 Mass. 550; 20 Neb. 620; 57 Am. Rep. 848; Richards on Ins. Law 571; 63 Vt. 437; 99 S. W. 930; 73 Ark. 274; 143 Fed. 271; 63 S. E. 962; 4 L. R. A. (N. S.) 636; 22 *Id.* 779; 13 L. R. A. 838; 80 Fed. 368; 97 N. Y. Supp. 836.

3. There was a misjoinder of parties in this, that the United States Fidelity & Guaranty Company was joined as a party defendant with appellant, whereas the policy issued by appellant was upon the life of a resident of the State of Louisiana, and the Fidelity & Guaranty Company had only undertaken by the bond sued on to indemnify policy holders of Arkansas. 78 Ark. 32-35.

*S. Brundidge, Jr.,* and *J. W. & J. W. House, Jr.,* for appellee.

1. There is no abuse of discretion in overruling a motion for a continuance where the motion itself does not comply with the essentials prescribed by the statute. Kirby's Digest, § 6173. An examination of the motion shows that there was no compliance with the statute, 61 Ark. 88; 71 Ark. 62; 94 Ark. 538, 545.

2. There was no misjoinder of parties. This court holds that sureties on the bond required of an insurance company may be joined as defendants in an action against the insurance company upon a claim based upon a policy. 138 S. W. (Ark.) 990; 91 Ark. 43; 120 S. W. 825; 134 S. W. 95; 86 Ark. 115; 92 Ark. 378.

3. Appellee was really entitled to a peremptory instruction in her favor at the close of the testimony, because there was nothing in the testimony introduced that could warrant a finding that deceased came to his death while violating the law.

Appellant's contention that the insured's death was not accidental within the meaning of the policy is without merit. The word "accident," as used in the policy, must be construed in the light of reason and the intention of the parties to the contract; and, when so construed, there is no question but that the death was the result of an accident. 60 Ark. 384 and cases cited; 68 Fed. 826; 60 S. W. 492; 28 S. W. 877; 30 L. R. A. 206, note.

The authorities by appellant do not support its contention that as the insured came to his death while in violation of the law, the policy is therefore void, because said authorities are not applicable to the facts here. In order to have forfeited the policy, it must appear that deceased received the mortal wound while engaged in and during the commission of a crime, not merely in consequence of it afterwards; but in this case Ford made no assault upon the woman. He arose to his feet, it is true, put his hand upon a chair and used some harsh language, but made no effort to strike her, was not in the act of striking or of violating any law when he was shot. 13 Allen (Mass.) 309, 316, 318; 45 N. Y. 422, 431; 19 Wall. 531; 57 Am. Rep. 848, 851; 97 Ind. 487; 120 Mass. 550; 99 S. W. 930; 3 Hun 515; 61 N. W. 485; 57 S. W. 614; 165 Fed. 176; 18 Mo. 109; 8 Am. St. Rep. 1913.

HART, J., (after stating the facts). 1. It was made ground of the motion for a new trial that the court overruled a motion for a continuance filed by the defendants.

In the motion, counsel for defendants says that he could prove by Miss Pritchard, in person or by deposition, that Samuel F. Ford assaulted her with a large chair, and that she shot him in self-defense. That the defendant has used its best efforts to reach in person the said Carrie Pritchard that it might take her deposition, but has never been able to communicate with her. That it can locate her and take her deposition.

Counsel for the defendants, in his motion for a continuance, also states that the plaintiff failed to file either the original

policy or a copy of it with her complaint, and for that reason he could not prepare a defense to the action.

The court did not abuse its discretion in overruling the defendant's motion for a continuance. Section 6173 of Kirby's Digest relating to motions for a continuance provides that the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence, and that the affiant himself believes them to be true. If it can be said that the affiant has complied with the first of these requisites, it certainly can not be said that he had complied with the latter. Indeed, counsel's motion shows that he could not state on oath that he believed the statements attributed to the absent witness to be true; for he states in it that the defendant has unsuccessfully attempted to communicate with the witness, and therefore the defendants could not know from her what she would testify. Counsel does not claim that any one else has stated to him or to any of the defendant's agents that she would testify as stated in the motion for a continuance.

This suit was filed on October 12, 1910. The circuit court convened on January 16, 1911, and the case was tried on January 28, 1911. The deposition of J. F. Ball was taken at Pollock, La., on January 7, 1911, and the record shows that defendant's attorney was present. Pollock is alleged to be the residence of Miss Pritchard, and the record is silent as to whether she still resides there. If she does, it is obvious that the defendants were negligent in not procuring her deposition. If she is absent temporarily, defendants could have ascertained from friends and acquaintances her whereabouts and have procured her deposition. If she left Pollock without stating to any one where she was going or when she would return, defendants have failed to show that there is any probability of finding her. It is true the counsel for the defendants states in his motion that he was only employed in the case one week before the court convened, but this is no excuse for the defendants. Service of summons was had upon them in the manner required by law in ample time for them to have employed counsel sooner, and they have no right to a continuance because they failed to do so. In short, there was nothing in the motion for a continuance from which the court could have been advised that there was any likelihood that the attendance of Miss Pritchard as a

witness could have been procured, or that her deposition could have been taken had a continuance been granted until the next term of the court.

Again, counsel says he could not prepare a defense because the plaintiff did not file the original policy or a copy of it with her complaint, but he does not state that the defendant Life Insurance Company did not have a copy of the policy. It will be noted that it is not alleged that any changes or alterations were made in the policy after it was delivered to the assured.

Plaintiff was not required to take her proof by depositions. She might have waited until the trial and produced her witnesses ·in court. Hence defendants can not be allowed a continuance because she saw fit to take depositions at any time, however short, before the court convened. Counsel does not claim that the defendant was taken by surprise by the evidence of J. F. Ball, whose deposition was taken.

2. It is next contended by counsel for defendants that the court erred in not submitting to the jury the question as to whether the death of the assured was effected through external, violent and accidental means within the meaning of the policy. We can not agree with counsel in that contention. It is true there was a quarrel between Ford and Miss Pritchard, and that he arose from his chair and grabbed it as if to strike her; but when his employer asked him to stop, he did so, and thereafter made no attempt whatever to strike or in any way molest her. There was no such relation between his acts and his death that the former can be said to have caused the latter. Ford did not know at the time and had no reason to believe that his slayer was armed with, and would use, a deadly weapon. He was making no hostile demonstration whatever towards his slayer at the time he was shot, and the act of Miss Pritchard in shooting him was the proximate cause of his death. In the case of *Supreme Lodge of Knights of Pythias* v. *Bradley*, 73 Ark. 274, we held that where an insured begins a personal difficulty by an assault with a weapon capable of inflicting great bodily harm or death, and is killed afterwards while retreating from the difficulty in good faith and not for the purpose of gaining a vantage ground to renew it, his death is not the proximate result of his original unlawful act, and consequently is not within a clause in a policy of insurance limiting the liability of the

insurer in case the insured meets his death in consequence of his violation or attempted violation of any criminal law. There was no conflict in the evidence in regard to the cause of the insured's death. Ball was the only witness, and from his testimony reasonable minds could not come to different conclusions. The taking of the life of the insured was a result which no reasonable man could have contemplated as likely to follow from Ford's previous quarrel with his slayer, and there was no question of fact to submit to the jury on this point.

3. Before the case was called for trial, counsel for defendants moved to dismiss the action: (1) because there was a misjoinder of parties; (2) because the bond was only liable to policy holders of Arkansas, and the insured was a resident of Louisiana.

In regard to the first ground, it may be said that this court has decided that the sureties on the bond required of an insurance company may be joined as defendants in an action against an insurance company to recover on a policy issued by it. *Queen of Ark. Ins. Co.* v. *Taylor,* 100 Ark. 9; *American Ins. Co.* v. *Haynie,* 91 Ark. 43; *Crawford* v. *Ozark Ins. Co.,* 97 Ark. 549.

The bond is conditioned to pay all claims arising or accruing to any person by virtue of any policy issued by the Insurance Company upon the life or person of any citizen of the State of Arkansas. The insured in his application for insurance stated that he was a resident of Pollock, Louisiana, and the policy of insurance recites that he was of Pollock, Louisiana; but it by no means follows that this was conclusive evidence of his citizenship, if it be conceded that the word "citizen" as used in the bond means the same as the word "resident." Notwithstanding the language of the policy and of the application, the question of citizenship was one to be determined by the evidence adduced at the trial of the case, and the court was right in overruling the defendant's motion to dismiss on that ground.

On the trial of the case, the plaintiff testified that she resided in Searcy, Arkansas, that her son was unmarried and claimed her home as his home, and was only residing in Louisiana while he was working there, and that he still regarded Searcy, Arkansas, as his home during the whole time that he stayed in Louisiana.

It may be said that in its instructions to the jury the

court did not submit the question of the insured's citizenship. Obviously, as far as the Insurance Company is concerned, there was no error in this; for it was liable on its contract of insurance, regardless of the fact of whether the insured was a citizen of the State of Arkansas or of Louisiana.

In regard to the surety, it will be deemed to have waived this defense. It was not made an issue in the case except by the motion to dismiss. When that motion was overruled, the question of the citizenship of the insured was not thereafter treated by the defendant Surety Company as an issue of fact in the case. If it desired that question to be submitted to the jury or to be treated as a disputed issue of fact, it should have called the court's attention to it by asking instructions in regard to it or by specific objections to the instructions given by the court.

The judgment will be affirmed.