INTERSTATE BUSINESS MEN'S ACC. ASS'N OF DES MOINES, IOWA, v. LESTER.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1919.)

No. 5204.

1. INSURANCE ⬦453—ACCIDENT INSURANCE—CHANGE OF OCCUPATION—"OCCUPATION OF PHYSICIAN AND SURGEON."

A physician, who at the time of insurance and of his death was in the general practice, and was also a medical officer in the state National Guard, with the rank of major, and who on the day he was killed, after visiting his patients, had gone out, as surgeon only, with a detachment of the guard which was on emergency service at the town of his residence during a strike, *held* to have been "engaged in the occupation of physician and surgeon," within the terms of the policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Occupation.]

2. INSURANCE ⬦453—ACCIDENT INSURANCE—CHANGE OF OCCUPATION.

To constitute a change of occupation from that specified in a life or accident policy, it must be abandoned and some other calling adopted.

3. INSURANCE ⬦146(3)—ACCIDENT INSURANCE—CONSTRUCTION OF POLICY—EXCEPTIONS FROM RISK.

If the language of a life or accident policy does not express an exception, when fairly interpreted, the courts will not write an exception into it by interpretation, for the purpose of exempting the insurer from liability after death or accident.

4. INSURANCE ⬦455—ACCIDENT INSURANCE—RISKS—EXPOSURE TO INJURY OR DEATH.

If a person holding a policy insuring him against accidental injury does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly free from culpability himself, the result is accidental as to him, though it may have been within the deliberate intent of the aggressor.

5. INSURANCE ⬦455—ACCIDENT INSURANCE—DEATH FROM ACCIDENT—"ACCIDENTAL DEATH."

The death of a physician, who was a medical officer in a National Guard regiment, and who was shot and killed while performing his duty as such officer with a detachment of the guard detailed to preserve order during a strike, *held* accidental, within the meaning of an insurance policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident; Accidental.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by Edith A. Lester against the Interstate Business Men's Accident Association of Des Moines, Iowa. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert M. Haines, of Des Moines, Iowa (S. D. Bishop, of Lawrence, Kan., and Dunshee, Haines & Brody, of Des Moines, Iowa, on the brief), for plaintiff in error.

Henry H. Asher and M. A. Gorrill, both of Lawrence, Kan., for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

AMIDON, District Judge. This action was brought by the plaintiff, Mrs. Lester, against the Insurance Association, as defendant, to recover on an accident policy covering the life of her husband, Dr. Pliny P. Lester. The policy insured him "while he is engaged in the occupation of a physician and surgeon * * * in case of death effected directly and independently of any other contributing, concurring or intervening cause, by external violent and accidental means." When the insurance was taken out, in January, 1913, and at the time of his death, Dr. Lester was engaged in the practice of his profession at Walsenburg, in the state of Colorado, which is one of the important towns in the district covered by the mining operations of the Colorado Fuel & Iron Company. He was also a member of the National Guard of Colorado, holding the rank of major, and assigned to the medical corps. During the fall of 1913, and the winter and spring of 1914, the employés of the Colorado Fuel & Iron Company were engaged in a strike, which for months assumed the form of belligerent opposition to the authorities of the state. The Governor called the National Guard into service to protect life and property in the district. Dr. Lester joined his company as a part of its medical corps. He was not otherwise connected with the military operations. He was equipped with no gun or sword. The only weapon upon his person was a pistol, which he carried in his pocket. He wore the insignia of the Red Cross, and his work was confined to caring for the sick and wounded. At times his service seems to have taken him away from his home town. Part of the time he was at Ludlow, but at the time of his death he was stationed at Walsenburg, and was engaged there in the practice of his profession, and at the same time performing such duties as were necessary in connection with the military force that was located in the city, numbering about 600 men. On the morning of April 29, 1914, he visited a number of his patients in Walsenburg, professionally. He then went with a small detachment, consisting of 30 men, to a point a few hundred yards from the city; the force having been sent out to reconnoitre and resist, if necessary, the activities of strikers who were in the foothills or mountains near the town. The lieutenant of this force was wounded. Dr. Lester had just finished dressing his wound, and was down on his hands and knees in a railroad cut observing some men through his field glass, to decide whether they were strikers or soldiers. He was shot, and died almost instantly.

The case was tried in the lower court before a jury, but at the conclusion of the evidence motions were made by both parties for a directed verdict. The jury was excused, pursuant to written stipulation, and the case submitted to the judge for decision. He found in favor of the plaintiff, and entered judgment for the full amount of the policy. The Insurance Association brings error to review that judgment.

In the trial court and here the case turns wholly upon two questions: (1) Was Dr. Lester at the time of his death "engaged in the occupation of a physician and surgeon"? (2) Was his death effected wholly by "accidental means"?

[1] In our judgment the first question is answered by the stipulation of facts, which was signed by the parties. It reads as follows:

"It is agreed and hereby stipulated by and between the parties to this action that the insured, Dr. P. P. Lester, was on the 17th day of January, 1913 [the date of the policy], a resident of Walsenburg, Colo.; that at that time his only occupation was that of a physician and surgeon, and that his duties were fully described as those of 'general practice'; that he continued in the general practice of medicine and surgery in and about Walsenburg, Colo.; and that on the morning of April 29, 1914, he called professionally and rendered professional services to several of his patients in the vicinity of Walsenburg.

"It is further agreed and hereby stipulated that the said Dr. P. P. Lester was on the 17th day of January, 1913, a surgeon in the medical corps of the Colorado National Guard, and continued to be such until the time of his death, at which time he held the rank of major, and was performing the duties of a surgeon in the said medical corps of the Colorado National Guard; that at all the times above mentioned he was a member of the American Red Cross Society."

This, in our judgment, shows beyond reasonable controversy that Dr. Lester, at the time of his death, was engaged in the occupation of a physician and surgeon. This is the showing, not only of the stipulation, but of the evidence.

[2] The defendant insists that the language of the policy, when fairly interpreted, confined Dr. Lester to the practice of his profession in the ordinary walks of civil life; that, when he joined his company in the military service to which it was called, he changed his vocation and became, instead of a physician and surgeon, a soldier. We do not think this position can be sustained without disregarding the facts. His service with his company was temporary. He was called out to meet an emergency. While the service lasted for some months, it was a side issue. It was known that it would be temporary, and was to be considered as answering a call to suppress a riot, or any other temporary engagement. This measures the term of the service; but we are to look at the character of the service also. Dr. Lester was in no way engaged in the military activities of his company. His services there were those of a physician and surgeon. He continued to practice his profession at Walsenburg, as well as attend to the needs of his company. The authorities are uniform that such temporary changes do not constitute a change of occupation within the meaning of insurance policies. To constitute such a change there must be an abandonment of the vocation specified in the policy and the adoption of some other calling. The record here affirmatively shows that there was no such change; on the contrary, it shows that Dr. Lester was engaged on the very morning of his death in the practice of his profession in the community where he resided, and, so far as his service in the company is concerned, it shows that he was there also engaged in the occupation of a physician and surgeon, and had been practicing that profession only an instant before his death. If such temporary activities are to destroy the protection of insurance, it must be by an express provision in the policy. Such exceptions have long been a feature of accident contracts. Their omission must be held to spring from deliberate purpose.

The language of Judge Hook, speaking for this court in Railway Mail Association v. Dent, 213 Fed. 981, 983, 130 C. C. A. 387, 389 (L. R. A. 1915A, 314), is equally appropriate here.

"So many and varied are the causes of accidental injury that the particular language employed in instruments of insurance is of the greatest importance. A word added or omitted may alter materially the scope of the indemnity. Many cases like the one at bar lie close to the border line, perhaps, because not definitely in mind for inclusion or exclusion; but it is a delicate thing for a court to adopt the latter course, merely upon a supposition that they would have been excluded in terms, had they been thought of. The insurer most familiar with the subject chooses the words of his undertaking, and it is not unjust to take them in the sense conveyed to the ordinary reader, nor to hold against him in case of real substantial doubt."

[3] What the company is really asking us to do is to amend its policy, and write into it an exception to the effect that, if the insured should engage in any military service the insurance should cease. It urges this upon the ground that the hazard of the service which Dr. Lester was performing was so much greater than the hazard which attends the ordinary life of a physician and surgeon that the court must find that it was not within the contemplation of either party to the contract. It may be that, if the subject had been brought clearly before the minds of the parties, some provision would have been made in the policy with respect to such hazards. But for the court to amend the policy, and write into it by interpretation an exception which is in no way expressed in its language, would violate every rule with which we are familiar for the interpretation of insurance contracts. If their language does not express an exception, when fairly interpreted, the courts have uniformly refused to write an exception into them by interpretation, for the purpose of exempting the company from liability after death or accident. It is a rule as old as insurance, and has been stated and enforced in countless decisions, that such instruments are prepared by the company; they have been the result of long development and very careful choice of language. If the language is open to doubt, the doubt will be resolved in favor of the insured. Here the language does not even furnish a ground for doubt.

In so far as vocation is a factor in determining the hazard, it is based upon the average of the whole class. It contemplates that each individual will in the course of his life necessarily be exposed to varying degrees of hazard. It is likewise true that the actuaries recognize that different individuals in the class will vary greatly in the extent of hazard to which they are exposed. A physician practicing his profession in the congested districts of a large city, for example, will be exposed to many hazards to which a physician in a small country town will not be subject. All of these matters, however, are embraced in the general average of hazards of the class of physicians and surgeons. If one individual at one time is exposed to a largely increased hazard, as Dr. Lester was on the occasion of his death, others will be exposed to hazards falling greatly below the average. These are the factors upon which the insurance is based.

Men holding accident policies do not have to enter into nice calculations to determine whether they are stepping into a field of greatly increased hazard or not in following their vocations. They may go about their course of life, knowing that they are protected by their insurance, unless they enter a hazard which is expressly excepted from their policy.

The parties to the contract here had under consideration the subject of exceptions. It provides that there shall be no liability for an injury sustained when the member is:

"(1) Insane. (2) Not in the present full possession and normal exercise of all his faculties. (3) Engaging in any act in violation of any law or ordinance."

The fewness of exceptions in such policies is constantly urged as a ground for accepting the insurance by agents and solicitors. To add to the list of activities which should forfeit the insurance, after accident or death, would be a fraud upon the insured. The uniform holding of the courts has been along the lines which we have stated. The law is elementary, and we cite a few cases which illustrate and apply the rules: Gotfredson v. German Com. Acc. Co., 218 Fed. 582, 134 C. C. A. 310, L. R. A. 1915D, 312; Wildey Casualty Co. v. Sheppard, 61 Kan. 351, 59 Pac. 651, 47 L. R. A. 650; Union Mut. Acc. Ass'n v. Frohard, 134 Ill. 228, 25 N. E. 642, 10 L. R. A. 383, 23 Am. St. Rep. 664; Taylor v. Ill. Com. Men's Ass'n, 84 Neb. 199, 122 N. W. 41, 24 L. R. A. (N. S.) 1174; Fox v. Masons' Fraternal Acc. Ass'n, 96 Wis. 390, 71 N. W. 363; Hess v. Pref. Masonic Mut. Acc. Ass'n, 112 Mich. 196, 70 N. W. 460, 40 L. R. A. 444; Eggenberger v. Guar. Mut. Acc. Ass'n (C. C.) 41 Fed. 172.

Was Dr. Lester's death "accidental"? Whether it was intended by the person who fired the fatal shot is matter of conjecture. That, however, is not material. The word, as used in the policy, is a term of art. To answer the question we must consider the event from the point of view of Dr. Lester. Was it accidental as to him? Defendant says it was not, because he knowingly and consciously exposed himself to the very hazard which caused his death, and must have contemplated such a result as a natural and probable consequence of the service in which he engaged. It is insisted that, to be accidental within the meaning of the policy, the result must have been "unforeseen and unexpected." We do not regard this view as sound, either in law or upon principle. Persons protected by accident insurance may incur consciously hazards which may result in their injury or death without forfeiting the insurance, unless the policy expressly excepts the hazard. In the course of life men are constantly required to pass into environments of greatly increased hazard. They may do that knowingly, and, if injury or death results, it does not forfeit their insurance, unless they do something which directly and immediately contributes to produce the act from which their death or injury results. For example, for several years past there have been districts in most of our large cities at certain seasons of the year in which there have been habitual assaults upon peaceful citizens by highwaymen. Men have been well aware of the risks of going upon the streets in such districts alone. They may have been so far conscious of the risks as to arm themselves for protection. And yet any peaceful citizen, who has in the pursuit of business or pleasure incurred these hazards, is entitled to claim, if he is injured or killed by highwaymen, that as to himself the result is accidental.

[4] So it is not true that simply going into an environment of great-

ly increased hazard, with conscious knowledge of such hazard, will cause injury or death which results therefrom not to be accidental within the meaning of such policies as we have before us here. Even in case of personal encounter, if the party wounded or killed is wholly free from fault, his injury or death is accidental within the meaning of the term as used in accident insurance. This has been the uniform holding of the courts. The line of distinction is this: If the party does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly free from culpability himself, the result is accidental as to him, though it may have been within the deliberate intent of the aggressor.

[5] Within this rule the death of Dr. Lester was clearly accidental. He did nothing to provoke or induce the act which resulted in his death. In the pursuit of duty he simply exposed himself to the hazard of the service. He may have contemplated death or injury as possible, or even probable; but, if he did, this would not take him out of the protection of his accident insurance. So far as we are able to discover from the authorities and text-writers, this is elementary law at the present time. It is possible to build up an argument to the contrary only by catching at phrases and single sentences, and separating them from the real scope of judicial decision. We content ourselves with referring to a few of the many cases which illustrate and enforce the rule. Ripley v. Railway Pas. Ass'n Co., Fed. Cas. No. 11854; Robinson v. Mut. Acc. Ass'n (C. C.) 68 Fed. 825; Talliaferro v. Travelers' Prot. Ass'n of America, 80 Fed. 368, 25 C. C. A. 494; Lovelace v. Travelers' Prot. Ass'n of America, 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638; State Life Ins. Co. v. Ford, 101 Ark. 513, 142 S. W. 863; Campbell v. Fid. & Cas. Co., 109 Ky. 661, 60 S. W. 492; Supreme Council v. Garrigus, 104 Ind. 133, 3 N. E. 818, 54 Am. Rep. 298; Union Cas. & Surety Co. v. Harroll, 98 Tenn. 591, 40 S. W. 1080, 60 Am. St. Rep. 873; Travelers' Prot. Ass'n v. Fawcett, 56 Ind. App. 111, 104 N. E. 991; Hutchcraft's Ex'r v. Travelers' Ins. Co., 87 Ky. 300, 8 S. W. 570, 12 Am. St. Rep. 484; Hutton v. States Accident Ins. Co., 267 Ill. 267, 108 N. E. 296, L. R. A. 1915E, 127, Ann. Cas. 1916C, 577; American Ins. Co. v. Carson (Ky.) 30 S. W. 879.

The judgment of the trial court is clearly right, and it is affirmed.