**GREAT SOUTHERN LIFE INS. CO. et al. v. CHURCHWELL.**

No. 11581—Opinion Filed June 26, 1923.

**1. Insurance—Life or Accident Policy—Construction—Exceptions.**

If the language of a life or accident policy does not express an exception, when fairly interpreted, the courts will not write an exception into it by interpretation, for the purpose of exempting the insurer from liability after death or accident.

**2. Same—Construction Favoring Insured.**

If a policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured.

**3. Same — Excepted Hazards — Burden of Proof.**

The burden of proof rests upon the insurer to establish the fact that death or injury has resulted from one of the excepted clauses enumerated in a policy of accident insurance.

**4. Same—"Accidental Means."**

If an accident policy contains no provision excepting such hazards, and by chance, without the design, consent, or co-operation of the insured, he is injured or killed as a result of a hazard incident to his occupation, his injury or death properly may be said to have been caused by accidental means.

**5. Same.**

Though the means whereby a personal injury or death is caused were put into operation with the design or intention of injuring or killing one or more persons, if chance determines what particular person or persons are injured or killed in consequence of the use of those means, as to a person so injured or killed, without his fault, consent, or co-operation, such means are to be regarded as accidental.

**6. Same—Death in Battle.**

The death of an insured caused by being struck by a bullet fired by the enemy while he is engaged in battle and while serving under draft in the Army of the United States as a soldier against Germany, held to have resulted from bodily injury sustained and effected directly through external, violent, and accidental means, within the terms of the policy.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by L. B. Churchwell against the Great Southern Life Insurance Company and Oklahoma National Life Insurance Company.

Judgment for plaintiff, and defendant brings error. Affirmed.

Embry, Johnson & Tolbert, for plaintiffs in error.

S. B. Garrett, for defendant in error.

Opinion by THOMPSON, C. This was an action by the defendant in error, the beneficiary named in policy issued February 7, 1917, whereby the plaintiff in error, The Oklahoma National Life Insurance Co., insured the life of Omar Churchwell in the sum of $1,000 and the plaintiff in error, Great Southern Life Insurance Co., reinsured and underwrote the policy under the laws of the state of Texas and the state of Oklahoma, on the 31st day of July, 1918. Under the policy, the plaintiffs in error obligated themselves by the following provision contained in the policy:

"Upon receipt of due proof of the death of the insured resulting directly, independently and exclusively of any and all other causes from bodily injuries effected solely through external, violent and purely accidental means (homicide or self destruction, sane or insane, not included) and occurring within twenty days after such injuries, the amount payable upon surrender for cancellation and full satisfaction of this policy shall be $2,000."

The death of the insured having occurred, the insurer, after receipt by it of the prescribed notice of the death, offered to pay $1,000, which the beneficiary was willing to accept without prejudice to her claim, asserted in this action, of the right to recover an additional $1,000 under the above quoted "Double Indemnity" provision of the policy.

The claim asserted in the petition was duly resisted by the plaintiffs in error, and by agreement of parties, the cause was tried to the court without the intervention of a jury, upon an agreed statement of facts and contentions of the parties, which was signed by the attorneys for the respective parties, and submitted to the court for its decision, as follows:

**"Agreed Statement of Facts.**

"It is stipulated and agreed by and between the plaintiff, L. B. Churchwell, and the defendants, The Oklahoma National Life Insurance Company and Great Southern Life Insurance Company, that the facts proven and established in this case and admitted by all parties to be proved and established are as follows:

1.

"On the 7th day of February, 1917, Omar Churchwell was insurable age and in health,

and that on said date the defendant. The Oklahoma National Life Insurance Company for value issued and delivered to said Omar Churchwell its life insurance policy No. 11553, for the sum of $1,000 payable in favor of L. B. Churchwell, plaintiff in this action, mother of said insured, the beneficiary, the said sum to be due and payable to said L. B. Churchwell upon the death of said insured and due proof thereof. A substantial copy of said policy is attached to Plaintiff's petition and marked 'Exhibit A.' The said policy having therein the following contractual agreement:

" 'The Oklahoma National Life Insurance Company, a stock company of Oklahoma City, U. S. A., subject to the terms and provisions hereinafter contained, will pay $1,000, the face of this policy upon receipt of the due proofs of the death of Omar Churchwell the insured, to L. B. Churchwell, (mother) beneficiary. Or, during the premium period of this policy and before the insured shall have attained the age of 60 years and before default in the payment of any renewal premium.

"Double Indemnity.

"Upon receipt of due proof of the death of the insured resulting directly, independently and exclusively of any and all other causes from bodily injuries effected solely through external, violent and purely accidental means (homicide or self destruction, sane or insane, not included) and occurring within twenty days after such injuries, the amount payable upon surrender for cancellation and in full satisfaction of this policy shall be $2,000.

2.

"That the defendant, Great Southern Life Insurance Company in conformity with the laws of the state of Texas and of the state of Oklahoma, for value, reinsured and underwrote the said Policy No. 11553 by its Policy No. 48584, substantial copy of which is attached to plaintiff's petition marked 'Exhibit B' in which is the following provisions:

" 'Assumption of Policy.'

" 'Omar Churchwell, Altus, Okla. The Great Southern Life Insurance Company hereby reinsures and assumes all liability under policy 11553 issued by the Oklahoma National Life Insurance Company, of Oklahoma City, Okla., provided same was in force at midnight on the 31st day of July, 1918.

"This done in conformity with reinsurance contract between Great Southern Life Insurance Company and the Oklahoma National Life Insurance Company, of date July 19th, 1918, filed with and approved by the insurance department of Oklahoma, and Texas, and certified by them as fully protecting the interest of all the policy holders of the Oklahoma National Life Insurance Company, of Oklahoma City, Oklahoma.' And said . reinsurance contract dated and signed 31st of July, 1918."

3.

"It is admitted and agreed that each of the foregoing policies were in full force and effect, fully paid up, on the 25th and the 27th days of October, 1918, and each of the said policies with all their provisions are made a part of this statement of facts as fully as if the same were herein set out in full.

4.

"At the date of the issuance of said policy, and during the year 1917, Omar Churchwell, the insured, was between the ages of 21 and 31 years, that he was a citizen of the United States, single, and subject to the Draft Act of Congress, passed in 1917, after the United States had declared war against the German Empire and was in a state of war with Germany. That on the ____ day of ____, 1917, Omar Churchwell was under the Selective Draft Act drafted by the Government of the United States into the army of defense and into the army service of the United States. That he was duly enrolled, and sworn and placed into the service as a soldier. That on the 25th day of October, 1918, said Omar Churchwell was a member of and a Corporal in Company M. 357th Infantry of the Expeditionary Forces of the United States in France. That on said 25th day of October, 1918, and while so engaged in the military service of the United States in France, and while acting in the line of his duty as such soldier and under the orders and directions of his superior officers, and while under fire from the enemy the said Omar Churchwell, received bullet wound from the enemy guns in the shoulder, back, chest and body, which wound was serious and fatal, and from the injury and wound so received the said Omar Churchwell did die, on the 27th day of October, 1918. That said injury was the sole cause of the death of the said Omar Churchwell, the said bullet wound so received by him being fatal.

5.

"The proper proof of death of the said Ombar Churchwell was furnished defendants as required by the terms of the policy and acknowledged and accepted by defendants prior to bringing this action.

6.

"Defendants acknowledge liability under the terms of the policies sued on in the sum of $1,000 with such accruals thereon as provided by the terms of the policy.

7.

"Defendants deny liability for Double Indemnity for the reason they allege that under the foregoing statement of facts, the death of Omar Churchwell, the insured, was

not death resulting directly, independently and exclusively of any and all other causes from bodily injuries effected solely through external, violent, and purely accidental means, as is claimed by plaintiff in her petition, and for the further reason that insured's death was the result of homicide.

### 8.

"The issue before the court then between the plaintiff and the defendants is, whether defendants are liable for the double indemnity, or $2,000 instead of $1000."

The court pronounced judgment in favor of the defendant in error and against the plaintiffs in error for the double indemnity as provided in the policy in the sum of $2,000 and $4, accrued earnings on said policy, with six per cent. interest from the 27th day of December, 1918, together with the sum of all the costs incurred by her in said action, and ordered execution therefor. Plaintiffs in error filed motion for new trial, which was overruled and exceptions taken, and the cause comes to this court regularly on appeal from said judgment.

Plaintiffs in error set out seven specifications of error, but submit all of them under the single proposition that the death of the insured was not the result of "purely accidental means," as specified in the policy, and therefore they are not liable for the double indemnity of $2,000 instead of the $1,000, that they admit is due the defendant in error. It is conceded in their brief that the death resulted from external and violent means.

It is also agreed that the insured met his death in battle at the hands of the enemy in combat between the American forces on one side and the German forces on the other, from a bullet wound from the enemy's gun, while in France acting in the line of his duties as a soldier, and under the orders and directions of his superior officer, he having been drafted by the Government of the United States and duly enrolled and sworn and placed in the service as a soldier engaged in the World War.

The only exception in the policy is where the death occurred by "homicide or self-destruction, sane or insane," and there is no provision which precludes the insured from entering into military service or engaging in war against the enemy of his country.

The parties to the contract here had under consideration the subject of exceptions, and homicide and suicide are the only exceptions mentioned in the policy.

What the plaintiffs in error are really asking us to do is to amend its policy and write into it an exception to the effect that if the insured should engage in any military service, the double indemnity provision should not be enforceable, but for the court to amend the policy and write into it by interpretation an exception, which is in no way expressed in its language, would violate every rule with which we are familiar for the interpretation of insurance contracts. If their language does not express an exception, when fairly interpreted, the courts have uniformly refused to write an exception into them by interpretation, for the purpose of exempting a company from liability after death or accident. It is a rule as old as insurance, and has been stated and enforced in countless decisions, that such instruments are prepared by the company; they have been the result of long development and very careful choice of language. If the language is open to doubt, the doubt will be resolved in favor of the insured. (See Interstate Business Mens Ass'n of Des Moines, Ia., v. Lester, 257 Fed. 225, being a case decided by the United States Circuit Court of Appeals, Eighth Circuit.)

Our own court, in the case of Union Accident Co. v. Willis, 44 Okla. 578, 145 Pac. 812, held:

"If a policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured."

Also, to like effect are the following cases decided by this court: General Accident Fire and Life Insurance Co. v. Hymes, 77 Okla. 20, 185 Pac. 1085; Shawnee Life Insurance Co. v. Watkins, 53 Okla. 188, 156 Pac. 181; Friend v. Southern States Life Insurance Co., 58 Okla. 448, 160 Pac. 457, 194 Pac. 204, on rehearing.

In the case heretofore referred to, vol. 257, Fed. Rep. in the body of the opinion, at page 229, we find this language:

"The fewness of exceptions in such policies is constantly urged as a ground for accepting the insurance by agents and solicitors. To add to the list of activities, which should forfeit the insurance, after accident or death, would be a fraud upon the insured. The uniform holding of the courts has been along the line which we have stated. The law is elementary, and we cite a few cases which illustrate and apply the rules . Gotfredson v. German Com. Acc. Co., 218 Fed. 582, 134 C. C. A. 310, L. R. A. 1915 D, 312; Wildey Casualty Co. v. Sheppard, 61 Kan. 351, 59 Pac. 651, 47 L. R. A. 650; Union Mut. Acc. Ass'n v. Frohard, 134 Ill. 228, 25 N. E. 642, 10 L. R. A. 383, 23 Am. St. Rep. 664; Taylor v. Ill. Com. Men's Ass'n,

84 Neb. 199, 122 N. W. 41, 24 L. R. A. (N. S) 1174; Fox v. Masons' Fraternal Acc. Ass'n., 96 Wis. 390, 71 N. W. 363; Hess v. Prof. Masonic Mut. Acc. Ass'n., 112 Mich. 196, 70 N. W. 460, 40 L. R. A. 444; Eggenberger v. Guar. Mut. Acc. Ass'n (C. C.) 41 Fed. 172."

Our court in the case of General Accident, Fire & Life Assurance Corp., Ltd., v. Hymes, 77 Okla. 20, 185 Pac. 1085, held:

"The burden of proof rests upon the insurer to establish the fact that death or injury has resulted from one of the excepted clauses, enumerated in a policy of accident insurance."

Then, from the above authorities, it is our opinion that the language used in the policy in the instant case does not admit of the construction that military service comes within the exceptions set out in the policy.

We now come to the more serious proposition, and that is whether the death of the insured resulted from purely accidental means, and attorneys for defendants lay great stress upon the use of the word "purely" before the words "accidental means." We do not think that the use of the word "purely" is of such great importance as they seem to attach to it in their argument. If the death were not accidental, that alone is sufficient to relieve the defendants of the double indemnity liability.

Attorneys for both plaintiff and defendants seem to have been unable to find any authority directly in point applicable to the agreed facts in this case other than the cases of Martin v. Peoples Mut. Life Ins. Co., of Jonesboro, decided by the Supreme Court of Arkansas, 223 S. W. 389, and the case of State Life Insurance Co. v. Allison, decided by the U. S. C. C. A., Fifth Circuit, 269 Fed. 93.

Both of the above cases were to enforce the double liability clause in insurance policies where the insured met death in the military service of the United States in the World War. In the Martin case the insured was serving under draft in the United States Army against Germany. In the Allison case the insured was subject to draft, but entered the army as a volunteer before he was called. Upon further independent investigation we find a similar case reported in 257 Fed. 225, decided by the U. S. C. C. A. Eighth Circuit, entitled Interstate Business Men's Acc. Ass'n. of Des Moines, Iowa, v. Lester, which is a case where a physician and surgeon, who was insured, belonged to the State National Guard, and was called out with the detachment of the guard, which was on emergency service in the town of his residence, during a strike, and was shot and killed while performing his duty as such officer. These are the only three cases that have come to our attention where the identical question presented in this case has arisen and this question has never come before this court before for its decision. However, this court, in the case of General Accident, Fire and Life Assurance Corp., Ltd., v. Hymes, 77 Okla. 20, 185 Pac. 1085, decided·

"That the injury is accidental within the meaning of an insurance policy, insuring against external, violent, and accidental means, although it is inflicted intentionally and maliciously, if unprovoked, unforeseen and unintentional on the part of the insured." Citing numerous authorities.

Upon comparing the three cases heretofore mentioned we find that the case from the Supreme Court of Arkansas is in direct conflict with the decisions of the cases from the U. S. C. C. A., of the Fifth Circuit, and the U. S. C. C. A., of the Eighth Circuit, above referred to. The Arkansas case holds:

"An accident policy, insuring against bodily injuries resulting directly, independently, or exclusively from causes effected solely through external, violent, and purely accidental means, held not to include an injury to insured from explosion of a shell fired by the enemy in battle, while insured was serving under draft in the army of the United States against Germany."

The Allison Case holds:

"The death of an insured, caused by his being struck by a piece of shrapnel from an exploded shell while engaged in battle as a soldier in the United States Army, held to have resulted 'from bodily injury sustained and effected directly·through external, violent and accidental means,' within the terms of the policy.

"If an accident policy contains no provision excepting such hazards, and by chance, without the design, consent, or cooperation of the insured, he is injured or killed as a result of a hazard incident to his occupation, his injury or death properly may be said to have been caused by accidental means.

"Though the means whereby a personal injury or death it caused were put into operation with the design or intention of injuring or killing one or more persons, if chance determines what particular person or persons are injured or killed in consequence of the use of those means, as to a person so injured or killed, without his fault, consent, or co-operation, such means are to be regarded as accidental."

The Lester Case holds:

"If the language of a life or accident policy does not express an exception, when fairly interpreted, the courts will not write an exception into it by interpretation, for the purpose of exempting the insurer from liability after death or accident.

"If a person holding a policy insuring him against accidental injury does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly free from culpability himself, the result is accidental as to him, though it may have been within the deliberate intent of the aggressor.

"The death of a physician, who was a medical officer in a National Guard regiment, and who was shot and killed while performing his duty as such officer with a detachment of the guard detailed to preserve order during a strike, held accidental, within the meaning of an insurance policy."

While we have great respect for the writer of the Arkansas opinion, both as an attorney and a jurist, we cannot agree that the view taken by him upon this proposition is sustained by the weight of authority or sound reason, for we cannot say that the insured in the case, who did not voluntarily go into danger, but was drafted into service under forced draft and was compelled to go into battle under the orders of his superior officers and was in the line of duty, and did not culpably provoke or induce the act causing his injury and death, did not come to his death by accidental means, and the fact that he, of all the two million men, who went over seas, happened to be in line of the enemy's bullet, which caused his death, and the fact that this bullet of the millions that were fired by the German forces happened to find its mark in the body of the insured, was a matter of chance, as we view it, and he would not have been killed by that bullet but for the accidental or fortuitous circumstances that his person happened to be in its path and it was chance which determined that he was the victim, and in the Allison Case, upon this proposition, the court held:

"Though the means whereby a personal injury or death is caused were put into operation with the design or intention of killing or injuring one or more persons, if chance determines what particular person or persons are injured or killed in consequence of the use of those means, as to a person so injured or killed, without his fault, consent, or co-operation, such means are to be regarded as accidental within the meaning of the provision in question. Of the millions of Americans who served as soldiers in the war with Germany, compara-

tively few were wounded or killed in battle. Battle casualty lists, in great measure at least, disclosed results of the chances of war. Whether the injury or death of a particular soldier is a consequence of his participation in a battle ordinarily depends on his happening to be or not to be in the path of a missile of war. It cannot well be said that the wounding or killing of any particular soldier belonging to a force going into battle is so far a natural and to be expected consequence of his so being exposed to danger as to prevent a casualty happening to him properly being regarded as within the category of accidents.

"We are of the opinion that the evidence adduced required the conclusion that the death of Lieut. Allison was a consequence of an unforseen and unforeseeable combination of fortuitous circumstances, and that the means whereby his death was effected were accidental within the meaning of the above set out provision of the policy. This conclusion is supported by the decision rendered in the case of Interstate Business Men's Accident Ass'n v. Lester, 27 Ed. 224, 168 C. C. A. 309."

The contention that the insured knew that he would probably be killed in battle does not determine the question of liability in this case and while it was to be expected that some of the soldiers engaged in the battle would be killed, yet it was unknown and unforeseen that this particular one would be killed. The attorneys for plaintiff contend that in the Allison Case there is a distinction between it and the Martin Case, in this, that it did not clearly appear from the testimony whether Allison was killed by a German shell or by the barrage of the Allies or of his own forces, but the court in that case held:

"Whether it was an American or a German shell, which exploded near where Lieut. Allison happened to be, it was a matter of chance or accident that it was he, who was struck by a piece of it, or that anyone would be struck by it."

And in the Lester Case the court held?

"Within this rule the death of Dr. Lester was clearly accidental. He did nothing to provoke or induce the act which resulted in his death. In the pursuit of duty he simply exposed himself to the hazard of the service. He may have contemplated death or injury as possible, or even probable; but, if he did this would not take him out of the protection of his accident insurance. So far as we are able to discover from the authorities and text-writers, this is elementary law at the present time. It is possible to build up an argument to the contrary only by catching at phrases and single sentences, and separating them from the real scope of judicial decision. We content our-

selves with referring to a few of the many cases which illustrate and enforce the rule. Ripley v. Railway Pas. Ass'n Co., Fed. Cas. No. 11854; Robinson v. Mut. Acc. Ass'n. (C. C.) 68 Fed 825; Talliaferro v. Travelers' Prot. Ass'n of America. 80 Fed. 368, 25 C. C. A. 494; Lovelace v. Travelers' Prot. Ass'n, 126 Mo. 104. 28 S. W. 877, 30 L. R. A. 209; State Life Ins. Co. v. Ford, 101 Ark. 513, 142 S. W., 863; Campbell v. Fid. & Cas. Co., 109 Ky. 661, 60 S. W., 492: Supreme Council v. Garrigus, 104 Ind. 133, 3 N. E. 818; Union Cas. & Surety Co. v. Harroll, 98 Tenn, 591, 40 S. W. 1080; Travelers' Prot. Ass'n v. Fawcett, 56 Ind. App. 111, 104 N. E. 991; Hutchcraft's Ex'r v. Travelers' Ins. Co., 87 Ky. 300, 8 S. W. 570; Hutton v. States' Accident Ins. Co., 267 Ill. 267, 108 N. E. 296; Am. Ins. Co. v. Carson (Ky.) 30 S. W. 879."

Then, for us to say that the defendants are released from paying the double indemnity provided for in the policy upon the death of the insured, resulting from a bullet fired by the enemy in battle, while he was engaged in the line of his duty, under the orders of his superior officers, would, in our opinion, be against the weight of authority and against sound reason.

We are, therefore, of the opinion that the judgment of the trial court is clearly right, and it is affirmed

By the Court: It is so ordered.