## AMERICAN INSURANCE UNION et al. v. BEAVERS et al.

No. 19435. Opinion Filed Sept. 9, 1930.

Rehearing Denied Oct. 28, 1930.

234

cide or the beneficiaries is the direct cause of the death of the party insured."

The defendants H. G. Boyd and M. L. Tyson, who appear to be nominal parties both below and here, were president and secretary, respectively, of the association.

On May 2, 1924, by contract, the defendant American Insurance Union acquired the assets of the association and assumed its liabilities. Omitting formalities, the contract provided:

"(1) The Tillman County Aid Association hereby sells, assigns sets over, and conveys unto the said American Insurance Union, all of its property of every kind and character, and wherever situated, and delivers the same at the time of the signing and ensealing of these presents.

"(2) The American Insurance Union, for and in consideration of the conveyances evidenced by paragraph 1, hereby assume all of the lawful obligations of the Tillman County Aid Association of every kind and character and agree to assume and to pay the same according to the terms and tenor, force and effect of said obligation at the same times and in the same manner as the said Tillman County Aid Association ought to do had this transfer, consolidation and merger not been made; it being understood that the said Tillman County Aid Association has and does hereby merge its existence with and into that of the American Insurance Union, save and except its franchise of being a corporation.

"(3) It is further understood that all members of the Til'man County Aid Association who are in good standing on the dates on which this contract is approved by both the Superintendents of Insurance of the states of Ohio and Oklahoma, shall at once ipso facto become members of the American Insurance Union without expense and without further medical examination, subject to the provisions of the constitution and by-laws of the American Insurance Union then in force or thereafter duly enacted.

"(4) Members of the Tillman County Association shall have the privilege, and the same is hereby granted to each and every one of them, of converting their respective benefit certificates or contract of insurance, without cost for like amount of effective insurance to any form of policy certificate or contract issued by the American Insurance Union, subject to the payments of premiums thereon in accordance with the table of rates governed by the policy selected at attained age; the benefits payable on converted policies to be the same as those paid to all other members of the American Insurance Union holding like policy certificates or contracts.

J. D. Karnes and Snyder, Owen & Lybrand, for plaintiff in error.

R. D. Miller, for defendants in error.

TEEHEE, C. In the trial court the parties to this cause occupied the reverse of their appellate positions. The case presented is this:

On February 23, 1924, the Tillman County Mutual Aid Association of Davidson, Okla., issued, in the form of a certificate of membership, its policy of insurance to S. L. Beavers, whereunder, upon the death of the insured, the insurer covenanted to pay to the beneficiaries, Lois Beavers and Robert G. Beavers, the parties plaintiff below, the sum of $2,000. By the policy, it was provided:

"This membership certificate is issued by the association and accepted by the member subject to the constitution and by-laws of the association."

The by-laws of the association contained this provision:

"This association shall not be liable for any policy where the assured commits sui-

"(5) The American Insurance Union hereby agrees that it will charge the members of the Tillman County Aid Association no more, age for age, risk for risk, and protection for protection, than is paid by the other members of the American Insurance Union.

"(6) To the members of the Tillman County Aid Association is hereby granted an option to continue their old policies until June 1 1925, by paying mortuary assessments and expense charges as heretofore paid in accordance with the conditions in their circle policies and receive the benefits therein promised; after June 1, 1925, members who have not exchanged their policies will receive amount of insurance, said premiums or assessment will purchase at attained age, based upon the whole life level rate table of the American Insurance Union.

"(7) In addition to the advantages and privileges above enumerated, the American Insurance Union offers to each and every member of the Tillman County Aid Association, the opportunity and right, without any cost or expense whatever for medical examination, policy fee, or any other charge to increase the insurance they now hold to any amount they may desire up to $25,000 on any one life, provided they are at the time of requesting said increase under 60 years of age, and can pass a satisfactory medical examination.

"(8) It is mutually agreed between the parties hereto, and the individual members of the said Tillman County Aid Association who accept membership in the American Insurance Union under this agreement, that the American Insurance Union is to succeed and be subrogated to all the rights of said Tillman County Aid Assocation, either in law or in equity, in and growing out of all medical examination, warranties, applications, health certificates, reinstatements, waivers, membership certificates, contracts and obligations pertaining to said membership, and also be subrogated to any and all defenses to any claim under any policy issued by said Tillman County Aid Association, which defense would be available to said Tillman County Aid Association, but for this merger and reinsurance of its membership; all said rights are as fully and completely assigned, transferred, and saved to the American Insurance Union as if it had issued the policy to the member in the first instance and said member hereby consents and agrees that all medical examination, warranties, health certificates, reinstatements, waiver and contracts, policies and obligations pertaining to said member shall remain as binding on him to the American Insurance Union as formerly to said Tillman County Aid Association.

"(9) The American Insurance Union shall be entitled to and shall receive all monthly premiums or assessments which have heretofore fallen due and have not been paid over to the officers of the Tillman County Aid Association and all premiums or assessments which may fall due hereafter from the members hereby reinsured, and said American Insurance Union shall be liable for all claims for death and disability which may arise hereafter in accordance with the terms of this contract."

On January 15, 1925, the insured was given notice by the defendant, American Insurance Union of the binding force of this contract. The notice was in the form of a rider to be attached to the insured's certificate of membership in the association with the copy of the contract printed on the reverse side. The rider provided as follows:

"In consideration of the contract entered into by and between the Tillman County Aid Association and the American Insurance Union on the 2nd day of May, 1924, whereby the membership of the Tillman County Aid Association was consolidated with the American Insurance Union, which contract the officers of the Tillman County Aid Association were duly authorized to execute by vote of the directors of the association held in the city of Frederick, Okla., in compliance with the terms of said contract, and in consideration of the holder of the attached certificate making his payments as provided in the constitution and by-laws of the association and in the contract of merger and consolidation, and complying with the provisions of the constitution and laws of the American Insurance Union now in force, or that may be hereinafter enforced. The attached benefit certificate is hereby assumed by the American Insurance Union under the terms and conditions as set forth in paragraphs 4, 5, 6, and 7 of the contract printed on the back thereof.

"It is understood and agreed that the attached certificate, the application for membership, and the application for reinstatement, if any, the contract of consolidation reprinted on the back hereof, this rider and contract, the by-laws of the Tillman County Aid Association and the by-laws of the board of directors thereof as hereinabove provided and the constitution and laws of the American Insurance now in force, or that may hereafter be in force, shall constitute the contract of beneficial membership between the American Insurance Union and the holder of the attached certificate and his beneficiary or beneficiaries."

The constitution and by-laws of the American Insurance Union contained this provision:

"Suicide or death by one's own hand whether sane or insane, within two years after becoming a beneficial member is a

risk not assumed by the society, and its only liability in such event shall be for the payment to the beneficiary of a sum equal to the premium paid by such member."

On March 7, 1925, after several months' illness, S. L. Beavers committed suicide. At the time of death he had paid all assessments required and was a member in good standing of the American Insurance Union. The amount of the premiums he had paid to the Union was $13.20. Proper proofs of death were furnished to the defendant Union.

Upon denial of liability, this action was brought. The cause proceeded to trial before a jury. The evidence raised the issue of whether or not the insured was insane at the commission of self-destruction.

Plaintiff's theory was that defendant's liability was governed by the suicide provision of the by-laws of the association, whereunder the issue of insanity, under the evidence, was one of fact for determination by the jury. Defendant's theory was that the suicide provision of its constitution and by-laws governed the case, whereunder the question of the insured's state of mind was immaterial, and therefore its nonliability was a question of law for the court, and thereunder plaintiffs had no right of recovery except as to the amount of premiums paid by the insured aggregating $13.20, in which sum defendant Union made proper tender to plaintiffs. At the conclusion of the evidence, the court announced that the case would be taken from the jury, and determined in accordance with defendant's theory, and thereupon entered judgment for plaintiffs in the sum of $13.20.

Upon motion for a new trial, the court reversed its position and adopted plaintiffs' theory of the case, and upon that ground awarded a new trial. This action of the court defendant American Insurance Union assigns as error.

Both parties agree that appellate disposition of the case turns on the construction of the contract between the association and the defendant Union read with the rider issued by the Union to the insured.

Defendant's position is that the rider having become a part of the contract of insurance between it and the insured, the terms thereof, as well as the terms of the contract between it and the association clearly show that its acceptance of the insured as a member of the Union, and his continuance as such member therein was conditioned on the insured's acceptance of the binding force of the constitution and by-laws of the Union, or, in other words, that the Union's suicide provision became a part of the policy of insurance in lieu of the suicide provision of the by-laws of the association. It is apparent that the contract and rider, read together, are susceptible of that interpretation.

It is equally apparent that the instruments are also susceptible of the interpretation contended for by plaintiffs in that the defendants' liability is governed by the suicide provision of the association, which became a part of the contract of the policy of insurance upon its issuance, and continued to constitute the contractual relationship between the parties until June 1, 1925, at which date a new policy was to be issued.

The rule is well established that, "in the case of ambiguity in a life insurance policy, that construction is to be adopted which is most favorable to the insured." Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Great Southern Life Ins. Co. v. Churchwell, 91 Okla. 157, 216 Pac. 676, 28 A. L. R. 97.

In Algoe v. Pacific Mutual Life Ins. Co., 91 Wash. 324, 157 Pac. 993, L. R. A. 1917A, 1237, the court, addressing itself to the rule, said:

"Insurance is, in its nature complex and difficult for the layman to understand. Policies are prepared by experts, who know and can anticipate the bearing and possible complication of every contingency. So long as insurance companies insist upon the use of ambiguous, intricate, and technical provisions which conceal rather than frankly disclose their own intentions the courts must, in fairness to those who purchase insurance, construe every ambiguity in favor of the insured."

That observation has apt application to the contract and rider involved in the cause at bar.

The rationale of the rule is stated in the Hurni Packing Company Case, supra, to wit:

"The language employed is that of the company, and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it."

Therefore, if it was the intention of the defendant Union at the time of the contract with the association and the transmission of the rider to the insured, that the suicide

provision of its constitution and by-laws should supplant such by-law provision of the association as a part of the policy of insurance held by the insured, that intention should have been evinced by language which could not be regarded as leaving room for a reasonable doubt as to the meaning thereof.

As there is language contained in these instruments which fairly indicates that the Union assumed the liability of the association under the certificate of membership held by the insured, as if its assumption of liability had not, in fact, been contracted, and that this liability without modification should continue until June 1, 1925, whereupon a new policy would have been issued by the defendant, it must follow that the trial court did not err in awarding plaintiffs a new trial.

The judgment of the district court is affirmed.

BENNETT, HERR, EAGLETON, and DIFFENDAFFER, Commissioners, concur. HALL, Commissioner, dissents.

By the Court: It is so ordered.

Note.—See under (1) 14 R. C. L. p. 926 et seq., R. C. L. Per. Supp. p. 3708 et seq.; Continuing Perm. Supp. p. 569.